## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
|  | ) |
| **v.** | ) |
|  | ) **Crim. No. 04-379 (RCL)** |
| **GERALD EILAND**, *et al.*, | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## MEMORANDUM OPINION

This matter comes before this Court on several defendants' motions to suppress evidence obtained via electronic surveillance. Several active defendants have moved to join or adopt the substantive suppression motions of their codefendants. Still other defendants who have since pled guilty moved to join or adopt the substantive suppression motions of their codefendants. The United States filed a Consolidated Response, to which two defendants replied. One defendant who has since pled guilty moved to join those replies. All parties participated in a hearing before this Court on October 11, 2005.

Upon consideration of all parties' filings, the applicable law and the entire record herein, motions by active defendants to join or adopt shall be GRANTED; motions by inactive defendants to join or adopt shall be DENIED as moot; and all defendants' motions to suppress electronic surveillance evidence shall be DENIED.

### I. BACKGROUND

Over a period of 18 months beginning April 2004, defendants filed a succession of 31 motions relating to the wiretap evidence against them. The evidence at issue resulted from

1

surveillance conducted between February and May of 2004 pursuant to applications approved by

judges of this Court and one other court.  The following applications and affidavits are at issue:

(1) February 13, 2004 application for a wiretap on defendant Miller's telephone including an

affidavit by Special Agent Sparks ("Sparks 2/13/04 Affidavit"); (2) March 17, 2004 application

for an extension of the Miller wiretap including an affidavit by Special Agent Sparks ("Sparks

3/17/04 Affidavit"); (3) April 15, 2004 application for a second extension of the Miller wiretap

including an affidavit by Special Agent Sparks ("Sparks 4/15/04 Affidavit"); (4) April 27, 2004

application for a wiretap on defendant Eiland's telephone based on an affidavit by Special Agent

Sparks ("Sparks 4/27/04 Affidavit); (5) May 28, 2004 application for an extension of the Eiland

wiretap based on an affidavit by Special Agent Sparks ("Sparks 5/28/04 Affidavit"); (6) May 13,

2004 application for a wiretap on defendant Bryant's telephone including an affidavit by Special

Agent Young ("Young Affidavit"); and (7) May 19, 2004 application for video and oral

communications surveillance including an affidavit by Special Agent Hall ("Hall Affidavit").

Defendants seek suppression of all intercepted communications and all evidence derived

therefrom.  Gaskins' Mem. Supp. 7; Gaskins' Mot. 1; Miller's Suppl. Mot. 3-4; Moore's Mem.

Supp. 13; Thomas' Mot. 12-13.

*A.  Standing*

Defendants assert that they are "aggrieved persons" with standing to challenge the

evidence.  Gaskins' Mem. Supp. 5-6.  Defendants claim to meet the "aggrieved person" standard

because they were targeted by the surveillance (Gaskins' Mem. Supp. 6; Gaskins' Reply 2-3;

Miller's Mot. 1; Simon's Mot. 3-4; Thomas' Mot. 2-3; Thomas' Reply 9-11), intercepted by it

(Eiland's Mot. ¶ 2; Gaskins' Mem. Supp. 6; Gaskins' Reply 2-3; Miller's Mot. 3; Moore's Mem.

Supp. 3; Simon's Mot. 3-4; Thomas' Mot. 2-3), implicated by the resulting evidence (Gaskins'

Mem. Supp. 6; Moore's Mem. Supp. 3-4), or some combination thereof.  The United States

disputes standing as to those defendants whose conversations were not captured in the contested

recordings.  Opp'n 10-16.

### B.  Statutory Requirements

#### 1.  Probable Cause

Defendants assert that statutory law and case law establishes that "the probable cause

standard for seizing telephone conversations is high for Fourth Amendment purposes."  Gaskins'

Mem. Supp. 7; Moore's Mem. Supp. 5; *cf.* Eiland's Mot. ¶ 11.  The probable cause standard is

even higher for video surveillance.  Thomas' Mot. 18-19.  The gravamen of defendants'

complaints is that the applications, and especially the affidavits, contained similar or identical

language, and were conclusory and incomplete.  Eiland's Mot. ¶ 14; Moore's Mem. Supp. 8-10,

17; Simon's Mot. 5; Thomas' Mot. 12-15; Thomas' Suppl. Mot. 2-4.  As such, they are alleged

to have insufficiently satisfied the probable cause standard and failed to meet all statutory

requirements.  Gaskins' Mem. Supp. *passim*; Miller Mot. 2-3.  If there were no probable cause,

the judge could not have "made an independent factual determination regarding the necessity of

[the] wiretaps."  Butcher's Suppl. Mot. 1.  The Government defends its use of similar language in

succeeding affidavits.  Opp'n 13.  The practice is not prohibited as long as the key requirement of

probable cause is satisfied; namely, that "the affidavit supports probable cause for the target

facilities the application seeks to make interceptions."  *Id.*; *id.* at 14.

Defendants also argue that the affidavits contained falsehoods.  The Sparks 2/13/04

Affidavit allegedly contains material false statements concerning defendant Gaskins, entitling

him to a *Franks* Hearing.  Gaskins' Mem. Supp. 12.  Specifically, two assertions are identified as false: that Gaskins committed identity fraud and that his bank accounts routinely reflected daily balances exceeding $9,000, indicating that he laundered Miller's illicit drug proceeds.  Gaskins' Mem. Supp. 12-15; Gaskins' Reply 4-5.  Even worse, the alleged misstatements were included with at least reckless disregard for the truth because the Government did not take steps to corroborate the information, some of which was provided by a cooperating witness the government knew to be incredible.  Gaskins' Mem. Supp. 15-16; Gaskins' Reply 6-7.

Defendant Thomas also argues that he is entitled to a hearing because the affidavits contained "many misleading, false, and reckless statements."  Thomas' Mot. 20.  He cites the omission of the previous application for interceptee Ballard, discussed *infra* Parts I.B.4 and II.B.5.  Thomas' Mot. 20-22.  Thomas argues that the allegation that he had plans to rob a bank or harm a cooperating witness was baseless.  Thomas' Mot. 22; Thomas' Reply 13-14.  He notes that several affidavits include errors that might have misled the judge into finding probable cause where there was none.  Thomas' Mot. 22-23.

Defendant Moore echoes arguments that the affidavits contain falsehoods.  Moore's Mem. Supp. 10-12, 14-16.  He points to unsupported implications that he was somehow involved with the conspiracy and had previously committed criminal acts.  Moore's Mem. Supp. 10-12.  These implications render the affidavits intentionally misleading because they "attempt[] to create the appearance of a criminal conspiracy" and "Corey Moore's association."  *Id.* at 14.  These material statements were made with at least reckless disregard because they relied on a cooperating witness whose reliability police had reason to mistrust.  *Id.* at 15.

The Government asserts that probable cause was amply established in its applications.

4

Opp'n 21-22.  The applications provided factual details supporting the finding of probable cause,

such as identification of co-conspirators and premises used in furtherance of the conspiracy.

Opp'n 22.  In regard to the allegedly false statements included in the affidavits, the United States

contends that defendants' arguments fail to meet the legal standard.  Opp'n 29-40.  They have not

established that the affidavits contained materially false statements, nor have they provided any

basis to believe that unsupported statements were included intentionally or with reckless

disregard for the truth.  Opp'n 32-40.

    *2. Necessity*

Defendants claim the applications for the electronic surveillance were deficient in another

respect: they failed to demonstrate why less intrusive investigative procedures were unable to

achieve the goals of the investigation.  Butcher's Suppl. Mot. ¶¶ 7-8, 15, 17; Eiland's Mot. ¶¶

4-5, 13-14; Gaskins' Mem. Supp. 7-8; Miller's Mot. 2-5; Moore's Mem. Supp. 13-14; Simon's

Mot. 5-8; Thomas' Mot. 4-7; Thomas' Reply 6.  One of the affidavits, defendants contend,

indicated that law enforcement might have had access to the information from confidential

sources.  Eiland's Mot. ¶ 6; Gaskins' Mem. Supp. 8-9; Simon's Mot. 6; Thomas' Mot. 6.

Further, leads had not been exhausted by traditional investigative methods such as physical

surveillance and the empaneling of a grand jury.  Eiland's Mot. ¶¶ 7-8; Gaskins' Mem. Supp. 11;

Simon's Mot. 6-8; Thomas' Suppl. Mot. 1-2.  The Government responds that the grand jury was

in fact used, as described in the Sparks affidavit, to corroborate testimony of cooperating witness

("CW") 5.  Opp'n 24.

The failure to exhaust, defendants contend, reveals that the Government did not seek

wiretaps as a last resort as required by the statute and case law, but instead used it as a more

convenient way to obtain evidence that could have been obtained through less intrusive means. Eiland's Mot. ¶¶ 9, 15; Thomas' Mot. 4-6.  Butcher also argues that the investigative goals were deliberately stated in broad terms so as to compel the result that normal procedures would not be sufficient to attain them, resulting in the judge's approval being predetermined.  Butcher's Suppl. Mot. 10, ¶¶ 10-14.  Finally, even if the initial applications were justified, defendants claim that the electronic surveillance should have been discontinued once sufficient leads were obtained by the end of March 2004.  Eiland's Mot. ¶ 10.  The new leads should have been pursued by means of traditional investigation before resorting to continued eavesdropping.  Eiland's Mot. ¶ 16.

The United States contends that the applications explained why less intrusive methods of investigation were deemed to be insufficient.  Opp'n 22.  The initial applications and extension applications explain how each of several methods produced inadequate results, or why they were not used at all.  Opp'n 22-25.

*3. Minimization*

Defendants argue that the Government failed to follow the minimization requirements of the statute, as articulated in case law.  Moore's Suppl. Mot. 2-4; Thomas' Mot. 15-17; Thomas' Reply 11.  Communications unrelated to the criminal investigation should not have been intercepted.  Moore's Suppl. Mot. 3; Thomas' Reply 11.

The United States avers that the surveillance was consistent with the minimization standard.  Opp'n 40-43.  Surveillance will be found insufficiently minimized when agents have not used reasonable efforts to minimize innocent interceptions as part of overall surveillance procedures.  Opp'n 43-44.  The Government believes that, under the circumstances of investigating a wide-ranging conspiracy, it made reasonable efforts to minimize, Opp'n 45-49,

6

and that this showing of reasonable minimization efforts is not changed by the fact that some of the interceptions were later determined to consist of non-criminal communications.  Opp'n 49-51.

    *4.  Other Statutory Requirements*

    Defendants contend that the statutory requirement of presenting the application for surveillance to a Department of Justice ("DOJ") official for approval was violated because several of the applications changed after being approved by the DOJ but before being submitted to a judge.  Thomas' Mot. 7-9; Thomas' Reply 2.  As such, defendants argue that neither the statute nor the internal U.S. Attorney's manual were strictly followed, bringing into question the accuracy and validity of the application.  Thomas' Mot. 9-11; Thomas' Reply 2-6.

    The United States disputes the assertion that it did not follow internal DOJ policy with regard to obtaining approval of an application before submitting it to a judge.  Opp'n 53-54.  Any changed information merely reflected the addition of information gained after the application was initially completed, and in any case, it was not a change significant enough to have affected the judge's determination of probable cause or necessity.  Opp'n 54.

    Defendants' final argument that the wiretap applications were inadequate rests on the requirement that the application list all previous applications for persons targeted or intercepted.  Ballard, an interceptee on one or more of the Miller calls, was the target of a prior application.  That fact was disclosed.  An interceptee named Clipper, however, was the subject of a prior application that was not disclosed.  The omission, defendants contend, constitutes a violation of the statute.  Gaskins' Mem. Supp. 17-18; Gaskins' Reply 3; Thomas' Mot. 20-22.  Furthermore, the affidavits contained inconsistencies with regard to Ballard.  Thomas' Suppl. Mot. 5.  The

Government contends that defendants misunderstand the requirement to list prior applications. Prior applications for interceptees who were not targeted interceptees need not be included, Opp'n 15-16, and Clipper was never a targeted interceptee in this investigation. *Id*. Thus, the United States maintains, defendants' arguments are misplaced.

Defendants suggest that the Government engaged in "forum shopping" by submitting an application for electronic surveillance authorization to a court in Virginia rather than from this Court, which had issued the previous authorizations. Thomas' Mot. 24-25; *see also* Gaskins' Reply 4. Thomas also suggests that the wiretap extensions, allegedly not typical in the District of Columbia, reveal an "impermissibl[e] exten[sion] of the invasion of privacy" in violation of Title III. Thomas' Mot. 28; *id.* at 25-28; Thomas' Suppl. Mot. 5.

The Government claims that the forum shopping argument is without merit. Opp'n 26-27. Given the nature of the surveillance at issue, there were legitimate reasons to seek authorization from the Virginia court. Details of the Virginia hotel room operation were carefully planned, including selection of the location, to maximize its success and minimize safety concerns. Opp'n 26-27; Hall Aff. ¶¶ 23, 25. Similarly, the United States submits that Thomas' arguments regarding the frequency of wiretaps being granted in the District of Columbia are at best irrelevant and may be inaccurate. Opp'n 52-53.

*C. Violation of the Order Granting Wiretaps*

Defendants argue that the Government failed to comply with the plain language of the Order in that it continued surveillance beyond the period authorized in the Order. Miller's Suppl. Mot. 2-4; Moore's Suppl. Mot. 1-2. They argue that the Order's language that surveillance must cease "within 30 days" of the first interception "or ten days from the date of the Order, whichever

is earlier" requires that surveillance terminate within ten days in every case.  Miller's Suppl. Mot.

2; *cf.* Moore's Suppl. Mot. 1-2.

The Government disagrees with defendants' understanding of the Order's terms.  Opp'n

52.  The Order required interceptions to cease within ten days only if agents did not begin

interceptions within the first ten days of the Order.  Opp'n 52.  Since it is documented that they

began intercepting calls within ten days of the Order, the interceptions were authorized to

continue for the following 30 days.  Opp'n 52.

## II.  DISCUSSION

*A.  Standing*

Under the statute pursuant to which the wiretaps were obtained, "[a]ny aggrieved person

 . . . may move to suppress the contents of any intercepted wire or oral communication, or

evidence derived therefrom."  Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.

§§ 2518 *et seq*. (2000) (hereinafter "Title III").  Consistent with existing standing law, an

aggrieved person is one who was intercepted or against whom the interception was directed.

*United States v. Bellosi*, 501 F.2d 833, 841-42 (D.C. Cir. 1974) (citing 23 D.C. Code §§ 541(9),

551(b) and 18 U.S.C. §§ 2518(10)(a), 2510(11)).  As such, the party seeking suppression must

show that his personal rights were violated by the search.  *See e.g., Alderman v. United States*,

394 U.S. 165, 176 n.9 (1969) (*cited in* CHARLES ALAN WRIGHT ET AL., 3A FED. PRAC. & PROC.

§ 674 (2004)); *United States v. Johnson*, 496 A.2d 592, 595 (D.C. Cir. 1985) ("Fourth

Amendment rights are personal rights which, like some other constitutional rights, may not be

vicariously asserted.") (quoting *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)) (other citations

omitted).

9

Some defendants argue that they have standing to challenge wiretap evidence that was neither directed at them nor intercepted them.  Gaskins' Mem. Supp. 6; Moore's Mem. Supp. 3. They claim that merely being "implicated" by the evidence gives rise to standing.  *Id.*  They cite no binding precedent for this assertion, and this Court finds their argument specious in light of existing case law and the principles that the standing requirement seeks to protect.  Therefore, this Court finds that a defendant may challenge only that evidence resulting from surveillance of his property or of which he was a target or interceptee.  *United States v. Williams*, 580 F.2d 578, 583 (D.C. Cir. 1978) (noting that "it is legally irrelevant that the surveillance was unlawful" unless defendant can "show that it was directed at Him, that the Government intercepted His conversations or that the wiretapped communications occurred at least partly on His premises").

B.  *Statutory Requirements*

1.  *Probable Cause*

Under Title III, a judge must find probable cause for the belief that the target and the facilities are connected to an offense.  18 U.S.C. § 2518(3).  It is not clear, in this Circuit, under what standard a district court reviews another district judge's determination that a wiretap was necessary.  Some cases indicate that such determinations are reviewed for abuse of discretion. *Cf, e.g., United States v. Zambrana*, 841 F.2d 1320, 1330 (7th Cir. 1988) (citing *United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir.1985)) ("[W]e review conclusions that wiretaps were necessary in each situation only for an abuse of discretion.").  Others imply that probable cause determinations are always reviewed *de novo*.  *See, e.g., Ornelas v. United States*, 517 U.S. 690, 699 (1996) ("We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."); *United States v. Kayode*, 254 F.3d

10

204, 219 (D.C. Cir. 2001) (reviewing "the legal conclusion of probable cause de novo")

(citations omitted); *cf. United States v. James*, 494 F.2d 1007, 1015 (D.C. Cir. 1974) (applying

standard of "reasonably discreet and prudent man" to test sufficiency of affidavit under Title III).

In the interest of granting defendants every possible opportunity to make their case, this Court

shall review *de novo* the sufficiency of probable cause in the applications.

In determining whether probable cause exists, this Court must ascertain what facts were

provided as a basis for the allegations of wrongdoing and whether there was some basis for

believing those facts to be credible.  *See, e.g., United States v. Scott*, 331 F.Supp. 233, 243

(D.D.C. 1971), *vacated on other grounds*, 504 F.2d 194 (D.C. Cir. 1974).  Specifically, this

Court must determine whether the applications provide sufficient basis for the probable cause

finding required by Section 2518(3), which requires the following:

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception . . . (d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.[1]

18 U.S.C. § 2518(3).

As an initial matter, this Court notes that the use of some similar or identical language

does not necessarily belie a lack of probable cause.  Such practices raise concern in the probable

cause analysis only if they indicate the absence of particularized facts on which to base suspicion

---

[1] Subsection (c) is omitted from this discussion because it does not reference probable cause.  It describes the necessity requirement and is accordingly discussed *infra* Part II.B.3.

of individual defendants.  Where, as here, the investigation involves multiple defendants alleged

to be acting in a common scheme, it is not unusual or inappropriate for some of the same

evidence to be used in support of probable cause as to more than one defendant or facility.

Similarly, the use of conclusory language does not necessarily render the applications

inadequate.  The determination of probable cause is by nature a conclusory process.  What agents

must provide are facts on which their conclusions or inferences are based and some basis for the

credibility of those facts.  Upon that showing, the issuing judge may make a finding of probable

cause notwithstanding the use of conclusory language.  Therefore, this Court does not find that

the use of the same, similar or conclusory language demonstrates that probable cause must have

been lacking.  Whether particularized facts and basis are demonstrated will be determined not by

reference to the form of the language used, but rather to its substantive content.

>           *a.  Miller Wire*

In the Sparks 2/13/04 Affidavit, many facts are related which support a finding of

probable cause that Miller and the other targets who remain active defendants were involved in

crimes relating to drug trafficking.  The Affidavit details several transactions relating to the sale

of drugs in which defendants participated or were closely associated.  *See, e.g.*, Sparks 2/13/04

Aff. ¶¶ 21-32.  It is true that many of the factual assertions rely on statements by CW5, whose

reliability might have been questioned because he or she had testified falsely in another case, but

the affidavit also contains corroboration of many of the statements, which provides a basis for

Sparks' belief that CW5's information is credible.  CW5 itself provides a great deal of detail,

*e.g., id*. at ¶ 24; paraphrases statements from other parties, *id*. at ¶¶ 28-29, 32; reports from

personal observation rather than speculation, *id*. at ¶¶ 21-23, 26-27, 30, 32, 35; and key

statements were corroborated by independent law enforcement activities, *id*. at ¶¶ 12, 25, 31.

The Sparks 2/13/04 Affidavit also provides sufficient facts to surmise that a wiretap on Miller's telephone would result in interceptions of communications about the four defendants' illicit activities, as required by (3)(b).  In a particularly compelling example, Sparks recounts separate incidents in which cooperating source ("CS") 2 and CW5 observed what appeared to be Miller and Gaskins conducting drug-related business on the target telephone.  *Id*. at ¶¶ 34-35, 70. In another example, CW5 reported that Gaskins is a "close associate" of Miller's, *id*. at ¶ 20, and independent investigation determined that the target telephone (and another telephone number which frequently called or was called by the target telephone, *id.* at ¶ 75) was issued to subscriber "Alvin Gasgen."  *Id*. at ¶ 20.

The Sparks 2/13/04 Affidavit also provides sufficient facts to find probable cause that the targeted telephone was used by Miller and the four defendants, as required by subsection (3)(d). An analysis of telephone records led investigators to conclude that the target telephone number is used by Miller, *id*. at ¶¶ 34-35; used by Moore, *id.* at ¶ 70; and as noted above, subscribed in a name that likely refers to Gaskins.  *Id.* at ¶ 20.  Similarly, telephone records showed that other telephones that frequently made calls to (and received calls from) the target telephone were associated with defendants.  *E.g., id.* at ¶¶ 70, 75, 77, 79, 81-82.

On the basis of these statements, this Court finds that there was sufficient probable cause for the authorization of a wiretap on Miller's telephone.  There is a sufficient description of detailed facts obtained from reasonably credible sources supporting an inference that Miller is involved in a criminal enterprise and that he and others use the target telephone in furtherance thereof.

#### b. *Miller Wire, First Extension*

Agent Sparks filed an affidavit on March 17, 2004 in support of an extension of the wiretap authorization on the Miller Wire.  The affidavit avers probable cause to continue the wiretap in order to intercept active defendants Bryant, Eiland, Gaskins, Ingram, Miller and Moore.  The affidavit relies primarily on three cooperating individuals: CW12, CW13 and CS14. Sparks 3/17/04 Aff. ¶¶ 10-12.  Sparks notes that the initial surveillance resulted in interceptions that demonstrate Miller's and other defendants' use of the targeted telephone for drug trafficking activities.  *Id.* at ¶¶ 19, 22.  The interceptions also suggested that defendants were engaged in criminal activities beyond those initially known.  *Id.* at ¶ 22.  Some of the interceptions that provide the most support for probable cause to extend the wiretap authorization are individual calls between Miller and each of the other active targeted defendants, Bryant, Gaskins, Eiland, Ingram and Moore.  *E.g., id.* at ¶¶ 24-25, 30, 32, 38-39.

Since Agent Sparks bases his conclusions largely on facts the Government observed in the course of the previously authorized surveillance rather than on information received from cooperating individuals, any concern about reliability of the source evaporates.  On the strength and credibility of the evidence, this Court finds that probable cause is established as to the first extension of the Miller wire.  The 3/17/04 affidavit includes more incriminating facts than the 2/13/04 affidavit, which has already been found by this Court to have been supported by probable cause.  Furthermore, since the target telephone is now confirmed to be used by Miller and other defendants, and is confirmed to have been the medium for conversations regarding drug trafficking, all three probable cause prongs of Section 2518 – subsections (3)(a), (3)(b) and (3)(d) – are satisfied.

### c. Miller Wire, Second Extension

The application for a second extension of the Miller wiretap was supported by an affidavit by Agent Sparks dated April 15, 2004.  The affidavit relies heavily on statements and conclusions contained in the prior affidavits supporting the initial Miller wiretap and the first extension thereof.  Sparks 4/15/04 Aff. ¶ 13.  It identifies as targets the same active defendants as were named in the first extension application, with the addition of newly identified defendant Timothy Thomas.  *Id.* at ¶ 16.  Sparks recounts several interceptions and physical surveillance involving nondefendant Tyrone Thomas that establish he was involved with other defendants in a drug trafficking enterprise, *id.* at ¶¶ 27-33, 35-37, and goes on to explain how he came to be a cooperating individual, *id.* at ¶¶ 37-38, 43.  With his cooperation, agents were able to record conversations related to the transport of a large volume of cocaine between (1) Tyrone Thomas and Timothy Thomas and (2) Tyrone Thomas and Miller.  *Id.* at ¶ 39.

The affidavit also recounts a long conversation in which agents suspect defendants were discussing drug transactions.  *Id.* at ¶ 53.  While defendants' coded speech makes it difficult to determine the topic of the conversation, it is clearly suspicious, and along with the other evidence of a drug trafficking conspiracy, establishes probable cause for the second wiretap extension. Subsections (3)(b) and (3)(d) are easily established, since the target telephone has since been confirmed to be used by Miller and other defendants for conversations relating to their unlawful enterprise.

### d. Eiland Wire

Agent Sparks provided an affidavit dated April 27, 2004 for the wiretap on three telephones associated with defendant Eiland.  He named as targeted interceptees active

defendants Eiland, Gaskins, Ingram, Miller, Moore and Thomas.  Sparks 4/27/04 Aff. ¶ 5(a).

The affidavit details how the Miller wire has led to evidence on the basis of which agents could

conclude that Miller and Eiland are managing the drug trafficking organization with the enlisted

help of other defendants.  *Id.* at ¶ 13.  Since it is known that the telephone targeted by the Miller

wire was being used to further the illicit activities, and the telephone targeted by the Sparks

4/27/04 Affidavit is on record as having called or been called by the Miller telephone, agents

have established that the target telephone is likely to be used in the suspected criminal

organization, satisfying Section 2518(3)(d).  The affidavit demonstrates that the target telephones

were being used by defendants to further their illicit activities, based on records of Eiland having

used them to call, or receive calls from, the Miller telephone and other telephones implicated by

defendants.  *Id.* at ¶¶ 45-66.  Therefore, the agents satisfied Section 2518(3)(b).

     The affidavit recounts much of the factual background provided in the second Miller

extension affidavit, *e.g., id.* at ¶¶ 15-44, which further supports the determination of probable

cause.  On the basis of the entire affidavit, this Court finds that the Sparks 4/27/04 Affidavit

supports a finding of probable cause for the Eiland wiretaps.

### e. Eiland Wire, First Extension

     Sparks' final affidavit is in support of an extension of the Eiland wiretap on one of the

targeted telephones, filed May 28, 2004.  Sparks supplements his list of targeted interceptees

with new persons who are not active defendants in this case.  Sparks 4/27/04 Aff. ¶ 7.  He also

adds CS1 as a cooperating source.  *Id.* at ¶ 8.  Sparks reasserts some of the same conclusions that

have been determined as a result of the previously authorized wiretaps.  *Id.* at ¶¶ 12-13.

     The affidavit provides examples of some communications intercepted pursuant to

previously authorized wiretaps, some of which are conversations in code that appear to be discussions relating to price, quantity or logistical details of drug transactions.  *E.g., id.* at ¶¶ 17-24, 29, 64, 70-71, 77.  The calls also reveal possible new crimes relating to Eiland's estranged wife, *id.* at ¶¶ 31, 36-38, 44, 51, 78; efforts by Eiland to avoid surveillance and detection, *e.g., id.* at ¶¶ 22, 27, 34, 41, 57, 63; and a discussion suggesting an interest in harming person(s) involved in the pickup of cocaine from a hotel room which led to an arrest, *id.* at ¶ 73.

Sparks provides examples of suspected occurrences of criminal activity that he personally witnessed in the course of conducting surveillance, *e.g., id.* at ¶¶ 26, 40, 52.  He also describes video surveillance, authorized by a federal court in Virginia, of a hotel room in that state in which agents had arranged a transfer of cocaine from a cooperating individual to an associate of defendant Thomas.  *Id.* at ¶¶ 67-68.  Greta Frank, an initial defendant in this case who has since pled guilty, was arrested after entering the hotel room and retrieving the cocaine.  *Id.* at ¶ 68. Information regarding the pickup likely provided by defendant Thomas was found on her person. *Id.*  As in other affidavits, Sparks provides a comprehensive list of telephone numbers that are known to have made calls to, and received calls from, Eiland telephones.  *Id.* at ¶¶ 80-89.  Many of the numbers have been demonstrated to be associated with the illegal organization.  Based on the foregoing, this Court finds that the Eiland extension application sufficiently demonstrates probable cause to extend the wiretap.  By this time in the investigation, agents had amassed evidence that easily meets the standard of probable cause as to all three probable cause prongs of Section 2518(3).

   *f.  Bryant Wire*

Agent Young submitted an affidavit on May 13, 2004 in support of an application for a

wiretap on defendant Bryant's telephone.  Targets of the interception include active defendants Bryant and Miller.  Young Aff. ¶ 2.  The affidavit relies partially upon previously captured calls to provide probable cause that Bryant was using the target telephone to conduct activities related to the drug trafficking organization.  *Id.* at ¶ 8.  It supports this conclusion with physical surveillance and personal observation of persons known to be involved in the enterprise.  *Id.* at ¶¶ 16, 42.

Young describes intercepted telephone calls dealing with: likely drug transactions, *e.g., id.* at ¶¶ 18-19, 21, 25, 27-28, 30, 33, 38, 40-41, 43, 45-46; arrangements to speak on land line telephones so as to avoid surveillance, *e.g., id.* at ¶¶ 16, 20, 26, 32, 34-35, 37, 39, 41-42, 44; and other criminal activities, *e.g., id.* at ¶¶ 29, 44, 65.  He describes information based on personal observation received from CW1 that implicates defendants Bryant, Miller and others in drug trafficking.  *Id.* at ¶¶ 48-65.  CW2 and CS1 also provided detailed information about trips to purchase narcotics.  *Id.* at ¶¶ 66-69.

Young then details the telephone numbers which have been recorded as calling, or having been called by, the target telephone.  *Id.* at ¶¶ 73-76.  Several such numbers have already been documented as being used in furtherance of the drug trafficking.  *Id.*  Given this detailed recounting of incriminating interceptions already made involving defendant Bryant and others known to be part of the conspiracy, this Court finds that probable cause was established.  Furthermore, since the target telephone is known to be used by defendants as part of drug trafficking, subsections (3)(b) and (3)(d) are satisfied as well.

g. *Virginia Hotel Room Surveillance*

Agent Hall submitted an affidavit filed May 19, 2004 in support of an application for

18

video and audio surveillance of a hotel room in Virginia.  He names as targeted interceptees Bryant, Eiland, Gaskins, Ingram, Miller, Moore and Thomas.  Hall Aff. ¶ 6(a).  Hall recounts the progress of the investigation, highlighting incriminating information learned about many of the targeted interceptees.  *Id.* at ¶¶ 10-15.  He then describes how agents came to arrest Tyrone Thomas and obtained his cooperation in the investigation.  *Id.* at ¶¶ 16-17.  From Tyrone Thomas directly and from consensually recorded conversations between him and his brother, defendant Thomas, agents obtained a wide range of incriminating information relating to several of the active defendants.  *Id.* at ¶¶ 18-23.  They also learned that Tyrone Thomas might be able to arrange for one or more defendants to pick up cocaine left by Tyrone Thomas.  *Id.* at ¶¶ 18-23. Agents thus sought approval for video and audio surveillance of the hotel room in which the operation would be conducted, in order to capture the person(s) retrieving the cocaine and any related conversations.

This Court finds that the Hall affidavit sufficiently demonstrates probable cause that active defendant targeted interceptees are engaged in the drug trafficking scheme, based primarily on incriminating information obtained from prior wiretaps and on information provided by Tyrone Thomas.  The Government also established probable cause that the video surveillance would likely capture the targeted interceptees in an act related to the criminal enterprise.  As such, this Court finds that the probable cause requirements of Section 2518 were satisfied as to the application for surveillance of the Virginia hotel room.

### h.  Falsehoods

Defendants' other argument regarding the lack of probable cause is that the Government made false statements in the applications.  Defendants correctly note that an affidavit in support

of a warrant is presumed to be valid.  Gaskins' Mem. Supp. 12; Moore's Mem. Supp. 14;

Thomas' Mot. 20.  They also correctly note the three requirements to qualify for a hearing on the

sufficiency of the affidavits: they must show that the affidavit contains a false statement, that the

false statement was necessary to the finding of probable cause, and that the affiant made the false

statement knowingly or with a reckless disregard for the truth.  *Franks v. Delaware*, 438 U.S.

154, 155-56 (1978).  Defendants fail, however, to meet the standard on any of the three prongs.

Defendants claim that the uncorroborated statements regarding money laundering, a planned

bank robbery, and prior criminal history are so misleading as to tip the scales in the issuing

judge's finding of probable cause.

    These alleged falsehoods, however, are not material such that their absence would negate

the finding of probable cause.  Similarly, this Court is unconvinced that the statements, if false,

were made with knowing intent or reckless disregard for the truth.  Defendants provide no basis

to believe that affiants knowingly lied or were reckless.  To the contrary, the affidavits reflect

careful wording of suspected activities, and include numerous details tending to support the

disputed allegations.  While the agents' statements likely were the result of drawing inferences

from the facts and evidence obtained, the making of educated inferences based on years of

experience and a plethora of facts is not reckless.  Because defendants have failed to establish the

elements that would entitle them to a *Franks* hearing, their request shall be denied.

    *3. Necessity*

    Under Section 2518(3)(c) of Title III, an issuing judge must find that "normal

investigative procedures have been tried and have failed or reasonably appear to be unlikely to

succeed if tried or to be too dangerous."  An issuing judge's finding of necessity is reviewed for

abuse of discretion.  *E.g., United States v. Sobamowo*, 892 F.2d 90, 93 (D.C. Cir. 1989); *but cf.*

*Williams*, 580 F.2d at 587-88 (noting that courts have given "close scrutiny" to applications

challenged for noncompliance).  Defendants concede, Simon's Mot. 8, that the Government is

not required to exhaust all other possible investigative means before applying for a wiretap.

*Williams*, 580 F.2d at 588 (noting that courts have "recogniz[ed] that wiretaps are neither a

routine initial step nor an absolute last resort").

The Sparks 2/13/04 Affidavit supports a finding of necessity.  It describes in detail a

litany of other investigative techniques that agents either used or contemplated using to further

the investigation.  Sparks 2/13/04 Aff. at ¶¶ 83-105.  The necessarily undercover nature of the

investigation rendered impractical any techniques that would reveal law enforcement's efforts.

*E.g., id.* at ¶ 96.  Moreover, because high-level drug trafficking is particularly difficult to detect

via traditional techniques, especially where, as here, the suspects were skilled at conducting their

illicit activities covertly, the Government found that many traditional techniques would be

fruitless.  *E.g., id.* at ¶ 96, 102.  This factor also highlights the importance of keeping the

investigation secret, because if defendants realized they were being observed, they would take

drastic steps to avoid further surveillance.  *Id.* at ¶¶ 95-96, 100-01.  Based on these and other

facts contained in the nearly 20 paragraphs detailing necessity, this Court cannot find that Judge

Roberts abused his discretion in finding that the Miller wiretap was necessary because alternative

investigative techniques had either been exhausted or were impractical.

The Sparks 3/17/04 Affidavit supports a finding of necessity for the first Miller wiretap

extension.  While much information had been obtained from the initial wiretap authorization, the

affidavit clearly documents the continuing need for the wiretap.  Sparks 3/17/04 Aff. ¶ 71.

Because defendants use coded language to refer to transactions, and intercepted communications involve so many different participants, agents were unable to gather sufficient evidence against target interceptees during the initial wiretap authorization period.  Furthermore, the Sparks 3/17/04 Affidavit demonstrates that other investigative methods were not sufficient to meet the goals of the investigation, primarily due to defendants' coded language and increased caution after they suspected they were being watched.  *Id.* at ¶¶ 72-85.  Accordingly, this Court does not find that Judge Roberts abused his discretion in finding necessity for the first extension of the Miller wiretap.

The Sparks 4/15/04 Affidavit supports a finding of necessity for the second extension of the Miller wiretap.  Among other things, agents were alerted to possible new crimes involving defendants, and needed to continue the surveillance in order to obtain enough detail about defendants' plans to be prepared to apprehend defendants or warn other law enforcement agencies if necessary.  Sparks 4/15/04 Aff. ¶ 62.  The affidavit explains that other investigative techniques are insufficient for the same reasons detailed in the prior affidavits, which are persuasive also as to the need for a second extension of the Miller wiretap.  *Id.* at ¶¶ 66-79.  Additionally, even though agents have gained an additional investigative tool in the form of Tyrone Thomas as a cooperating individual, the affidavit notes that he is viewed with such suspicion by targeted defendants that he is unlikely to be able to arrange drug transactions and that, even if he could, safety concerns might obviate the opportunity.  *Id.* at ¶ 73.  The same reasons that this Court previously found were sufficient for a finding of necessity are present here, and no new avenues have opened up to agents that negate that finding.  Therefore, this Court does not find that Judge Roberts abused his discretion in finding necessity for the second

22

extension of the Miller wiretap authorization.

The Sparks 4/27/04 supports a finding of necessity for the Eiland wiretaps.  It describes that, while some new information has been obtained by the previously authorized wiretaps, they have not provided sufficient evidence to support a determination of proof beyond a reasonable doubt. *Id.* at ¶ 67.  Furthermore, traditional investigative techniques were impractical or inadequate, *id.* at ¶¶ 68-80, in part because defendants once again use precautions that foil physical surveillance efforts.  *Id.* at ¶¶ 70-72.  Indeed, defendants have become so aware of the law enforcement presence that they even know at least one agent by name.  *Id.* at ¶ 69.  As before, reasons are present that have already been demonstrated sufficient to support Judge Roberts' finding of necessity, and no new circumstances are alleged which compel a finding that his determination was an abuse of discretion.

The last Sparks affidavit, filed on 5/28/04, also supports a finding of necessity to extend one of the Eiland wiretaps.  Sparks recounts the other techniques that have been tried, and concludes that a continued wiretap is the only method with a "reasonable likelihood of securing the evidence necessary to prove beyond a reasonable doubt that the target interceptees . . . are engaged in the above-described offenses." *Id.* at ¶ 90.  Other techniques were not likely to be fruitful for the same reasons described in prior affidavits.  *Id.* at ¶¶ 91-103.  As such, this Court finds that there was sufficient basis for Judge Roberts' finding of necessity such that it was not an abuse of discretion.

The Young affidavit supports a finding of necessity for the Bryant wiretap.  Young explains that other methods such as physical surveillance have been helpful, but not sufficient, in providing enough evidence to prove the suspected crimes beyond a reasonable doubt.  *E.g., id.* at

¶¶ 78-82.  Moreover, physical surveillance risks compromising the investigation because continued use may tip off defendants.  *Id.* at ¶¶ 82-84.  The cooperating individuals are of limited use because they are either suspected by the other defendants to be cooperating, or they are not sufficiently infiltrated to provide access to defendants.  *Id.* at ¶¶ 86-87.  Other methods would be similarly unhelpful or too dangerous.  *Id.* at 88-95.  This Court finds this recitation to be a sufficient showing of necessity supporting Judge Roberts' finding thereof.

Finally, the Hall affidavit supports a finding of necessity for the Virginia hotel room surveillance.  As described above, the applications for telephone wiretaps for surveillance for general evidence gathering demonstrated necessity because of the difficulty of obtaining evidence by traditional, less intrusive methods.  The surveillance at issue in the Hall affidavit is of a different type: it is a one-time operation designed primarily to capture evidence of a target knowingly engaging a criminal act.  Because of this difference, necessity is easier to establish.  The operation will result in less than one day of surveillance, an important distinction from the ongoing operations relating to telephones.  Hall dutifully catalogs other investigative options and convincingly demonstrates that they are likely to be infeasible or are too dangerous to attempt.  Hall Aff. ¶¶27-38.  On the basis of the foregoing, this Court finds that there was sufficient basis for Judge Hilton's finding of necessity.

*4.  Minimization*

Title III and the Orders approving the wiretaps include a requirement that the Government take steps to avoid intercepting innocent calls.  18 U.S.C. § 2518(5).  In meeting the requirement of minimization, the Government is held to a reasonableness standard.  *James*, 494 F.2d at 1018.  Defendants cannot demonstrate a failure to minimize by pointing to isolated incidents of

irrelevant interceptions.  Rather, defendants must show that the Government failed "on the whole" to do "all they reasonably could to avoid unnecessary intrusion."  *Id.* at 1018 (citations omitted).

The United States provided a description of its minimization policy, including a description of how each agent involved in the monitoring was trained to minimize.  Opp'n at 46-48.  It also provided statistics for the number of interceptions that were minimized, *id.* at 49, and kept logs of every call during the wiretap periods, which it provided to defendants.  *Id.* at 48.  Based on the record herein, this Court does not find that the United States was unreasonable in minimizing innocent interceptions.  The mere fact that a relatively small number of calls were minimized is not dispositive of the issue.  *E.g., James,* 494 F.2d at 1018.  Additionally, minimization efforts were hampered by the extremely short duration of the calls, and by defendants' use of coded language.  Opp'n at 48.

These factors highlight the difficulty of minimizing in an investigation of this type.  Case law notes that the reasonableness standard varies according to the "real-world problems confronting the investigators," reflecting the difficulty of minimizing in such investigations.  *E.g., United States v. Wilson*, 835 F.2d 1440, 1445 (D.C. Cir. 1987) ("The courts have recognized that investigation of a large, complicated conspiracy justifies a relatively intensive surveillance of calls.") (citing *Scott v. United States*, 436 U.S. 128, 142 (1978)).  Finally, Judge Roberts regularly reviewed the progress of the wiretaps, including the minimization efforts.  Opp'n at 48.  Based on the foregoing, this Court concludes that the United States demonstrated that it reasonably minimized innocent interceptions.

*5. Other Statutory Requirements*

Defendants argue that the Government violated Section 2518 in three ways.  First, it allegedly failed to follow its internal DOJ pre-approval procedures; second, it allegedly failed to list prior applications for an interceptee; and third, it allegedly engaged in forum shopping.  The Government disputes all three points as meritless.  This Court agrees.

First, even though the United States concedes that some of the Sparks affidavits were changed between the time they were approved by a DOJ official and presented to Judge Roberts, there is no indication that doing so even constituted a violation of the statute or, if it did, that it warrants suppression of the evidence.  Defendants must present more than baseless speculation for a finding that Sparks' actions violated the statute and that the appropriate remedy is suppression.

Second, while failing to list a prior application would be a more serious concern, the Government has correctly noted that prior applications need not be listed for interceptees who were not targeted in the investigation for which the wiretap was sought.  This Court finds that the Government adequately demonstrated that the affidavits were not in violation of the statute's requirement to disclose prior applications.

Third, this Court is unpersuaded that forum shopping occurred here.  Even if it had, this Court is unconvinced that it would necessitate suppression of the evidence in this case.  The Government provided plausible reasons for obtaining authorization for the video surveillance from a different court than that from which it had sought authorization for the telephone wiretaps.  The United States is under no obligation to seek all wiretap authorizations in the same court when it is engaged in a long-term investigation of activities carried out in many different

locations.

*C.  Violation of the Order Granting Wiretap Authorization*

Defendants' argument with regard to the terms of the Orders barely warrants

consideration by this Court.  There is absolutely no basis for reading the Order the way

defendants contend.  In fact, on defendants' reading, the Order is nonsensical: defendants would

have this Court believe that the entire phrase discussing the 30-day period is extraneous.  This

Court finds that the Order authorized interceptions for 30 days from the first interception, as long

as agents began interceptions within ten days of the Order.  If they had not, then defendants

would be correct that any interceptions made more than ten days after the date of the Order

would have been unauthorized.  In each case, however, agents began interceptions well within

the ten day period, and thus could continue the wiretaps for 30 days thereafter.

### III.  CONCLUSION

For the foregoing reasons, this Court finds that motions by active defendants to join or

adopt shall be GRANTED; motions by inactive defendants to join or adopt shall be

DENIED as moot; and all defendants' motions to suppress electronic surveillance evidence shall

be DENIED.


A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, October 21, 2005.