UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 04-379 (RCL) |
| GERALD EILAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before this Court on motions by several defendants seeking severance of counts and/or co-defendants. The motions under consideration are of four types: motions by active defendants to sever; motions by inactive defendants to sever; motions to join severance motions of co-defendants; and motions for leave to late file severance motions.

First, the following severance motions have been filed by active defendants: defendant Gaskins filed a motion [254] on May 12, 2005 to sever defendant and counts; defendant Moore filed a motion [262] on May 20, 2005 to sever defendant and counts; defendant Eiland filed a motion [290] on May 31, 2005 to sever counts; defendant Thomas filed three motions[1] [271, 325, 420] to sever defendants and counts on May 20, 2005, July 16, 2005 and November 3, 2005, respectively; defendant Ingram filed a motion [424] on November 10, 2005 to sever his charges from that of co-defendant Eiland; defendant Plummer filed a motion [426] on November 10, 2005 for severance and a separate trial; defendant Butcher filed a motion [427] on November 10, 2005 to sever defendants and objection to current trial groupings; and defendant Bryant filed two

---

[1] Since defendant Thomas' third motion merely reasserts his first motion for severance, *see* Doc. No. 420 at 1, this Court shall only refer to Thomas' first and second motions.

motions [268, 430] for severance on May 20, 2005 and November 10, 2005, respectively.

Second, inactive defendants Ford and Holmes each filed a motion [272, 273] for severance on May 20, 2005.  Third, defendants moved to join or adopt severance motions of co-defendants: defendant Bryant filed a motion [269] on May 20, 2005 for leave to join Eiland's response to the Government's case management proposal; defendant Thomas filed a motion [275] on May 22, 2005 to adopt and conform to motions to sever filed by co-defendant Bryant [268] and inactive defendant Simon[2] [266]; and defendant Butcher filed a motion [429] on November 10, 2005 to join in his co-defendants' severance motions.  Finally, two defendants moved for leave to late file severance motions: defendant Eiland filed an unopposed motion [288] on May 29, 2005 for leave to file an untimely motion for severance; and defendant Thomas filed a motion [326] on July 17, 2005 for leave to late file a severance motion and opposition to the Government's case management position.

The United States opposed all active defendants' substantive severance motions in a consolidated response [437] filed on November 17, 2005; and defendant Eiland filed a reply [443] thereto on November 28, 2005.

Upon a thorough review of each party's filings, the applicable law and the entire record herein, this Court has determined that active defendants' motions [254, 262, 268, 271, 290, 325, 420, 424, 426, 427, 430] to sever co-defendants and/or counts shall be DENIED; inactive defendants' motions [272, 273] to sever defendant and counts shall be DENIED AS MOOT; defendants' motions [269, 275, 429] to join in the ripe motions of their co-defendants shall be

---

[2] Notwithstanding defendant Simon's guilty plea, his motion is considered herein pursuant to defendant Thomas' motion to join or adopt.

GRANTED; and defendants' motions [288, 326] for leave to late file severance-related motions shall be GRANTED.

## I.  BACKGROUND

The defendants are charged in a 96-count Fourth Superseding Indictment ("Indictment"). All nine defendants currently pending trial are charged in Count One, Narcotics Conspiracy and in Count Two, RICO Conspiracy.  Defendants Eiland and Miller are charged also in Count Three, Continuing Criminal Enterprise.  At least one but not all remaining defendants are also charged with the following: possession with intent to distribute narcotics (Counts 8-9, 11-13, 15-16); distribution of narcotics (Count 10); use of a communications facility to facilitate possession with intent to distribute narcotics (Counts 17-76); interstate trafficking of stolen motor vehicles (Counts 77-89); conspiracy to commit murder (Count 90, 93); first degree murder as accessory after the fact (Count 91); accessory to murder after the fact (Count 92); murder conspiracy in aid of racketeering activity (Count 94); and firearms offenses (Counts 95-96).

This case was initially filed in August of 2004 and has named as many as 21 defendants. Over the past 15 months, several defendants have pled guilty, leaving only the nine remaining defendants awaiting trial.  The Government has filed a total of four indictments.  Some of defendants' objections have become obsolete as new indictments have been returned, new pleas entered, and new trial groupings created.  In the interest of safeguarding defendants' fair trial rights, however, this Court shall consider each defendant's arguments as they apply to the current indictment and trial groups even if he has failed to update his motion.

The remaining nine defendants were separated into two groups for trial by Order of this Court on October 19, 2005.  Security concerns necessitated some form of severance, and this

Court created two trial groups based on the schedules of counsel and considerations of judicial economy. Trial one, set to commence on March 6, 2006, is comprised of defendants Miller, Thomas, Moore and Bryant. The second trial will involve the remaining five defendants, Eiland, Ingram, Gaskins, Butcher and Plummer, and is scheduled to begin on September 6, 2006.

Defendants argue that the counts and co-defendants have been improperly joined under Federal Rule of Criminal Procedure 8(b) (Bryant's Second Mot. 1-3; Eiland's Resp. ¶ 7; Gaskins' Mot. 1; Plummer's Mot. 1, 3; Simon's Mot. 2-4; Thomas' Second Mot. 1) and that, even if properly joined, they must be severed pursuant to Federal Rule of Criminal Procedure 14(a) (Bryant's Second Mot. 3-4; Eiland's Resp. ¶ 7; Gaskins' Mot. 1; Ingram's Mot. 1-5; Moore's Mot. ¶¶ 1, 16; Plummer's Mot. 1, 3; Simon's Mot. 5-9; Thomas' First Mot. 1-2; Thomas' Second Mot. 1-2). The basis of the severance motions is that the disparity of charges and/or evidence among co-defendants will result in unfair prejudice if they are presented in group trials. Jurors, defendants contend, will be unable to separate the violent and serious charges and evidence against some defendants from the case against those defendants who are charged with a lesser role in the alleged conspiracies.

The risk of prejudice, defendants argue, is particularly great when, as here, the seriousness and quantity of the alleged crimes and evidence varies greatly from one defendant to another (Bryant's Second Mot. 4; Butcher's Mot. 6-8, ¶¶ 2-19. Gaskins' Mem. P. & A. 4-6; Ingram's Mot. 3; Moore's Mot. 2; Plummer's Mot. ¶¶ 2-4; Thomas' First Mot. 5; Thomas' Second Mot. 6-10) and a conspiracy count is included in the indictment (Thomas' First Mot. 2-3; Thomas' Second Mot. 8). It is alleged that such charges, by their very nature, will result in prejudice if defendants remain joined for trial. (Gaskins' Mem. P. & A. 4-5; Thomas' First Mot.

4; Thomas' Second Mot. 7-8.)

Defendants acknowledge that joinder may be efficient (Butcher's Mot. 8-9; Thomas' First Mot. 2), but they insist that convenience must yield to the greater interest of protecting defendants' constitutional rights (Ingram's Mot. 2; Thomas' First Mot. 2). Defendants also argue that limiting instructions, sometimes used to cure the risk of prejudice, are insufficient in this case. (Bryant's Second Mot. 4; Gaskins' Mem. P. & A. 8; Moore's Mot. 2; Simon's Mot. 7; Thomas' First Mot. 3.) Finally, several defendants question the inclusion of the stolen vehicle trafficking charges in the present indictment, arguing that they have not been shown to be related to the other conspiracies. (Eiland's Mot. ¶¶ 1-10; Gaskins' Mem. P. & A. 7-8; Moore's Mot. ¶¶ 12-13; Simon's Mot. 3.) The presumption that joinder is proper cannot be supported, defendant Eiland maintains, without indication of how the grand jury must have been guided to find a connection. (Eiland's Resp. ¶¶ 5-6.)

The United States strongly opposes severance. The indictment charges that defendants were involved, to varying degrees, in a wide-ranging criminal enterprise that engaged in drug possession and distribution, vehicle theft and other crimes. (Govt.'s Resp. ¶ 2.) The Government notes that joinder is presumptively appropriate in conspiracy trials because the case against each defendant will likely rest on the same evidence (*id*. at 5); further severance, therefore, would result in a waste of judicial resources (*id*. at 6).

The Government also argues that severance is inappropriate because defendants have failed to show that substantial prejudice will result from the current trial groupings. Namely, defendants have not demonstrated that joint trials will prevent a jury from making reliable judgments about each defendant's guilt or innocence. (*Id*. at 11.) While the indictment reflects

that some defendants were less active in the criminal enterprise, each nonetheless was a full participant and each was connected to the organization's leader or key members. (*Id*. at 11-12.)

## II.  DISCUSSION

Defendants' claims raise two issues: first, whether the defendants were properly joined in the first place; and second, even if properly joined, whether they now should be severed. These questions shall be resolved under the Federal Rules of Criminal Procedure and relevant case law.

A.  Joinder of Defendants

Joinder is governed by Rule 8(b), which states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All of the defendants need not be charged in each count.

FED. R. CRIM. P. 8(b). Charges are properly joined when they are based on a "series of acts or transactions" that are part of "a common scheme or plan." *United States v. Brown*, 823 F.2d 591, 598 (D.C. Cir. 1987) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)) (*cited in United States v. Gray*, 173 F. Supp. 2d 1, 5 (D.D.C. 2001) (Lamberth, J.)). In conspiracy cases, joinder is presumptively proper where the alleged acts are part of the same series of acts or transactions. *See United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (citing *Perry*, 731 F.2d at 985).

Moreover, joinder is preferred in conspiracy cases, *cf. United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999) ("Joint trials are favored in RICO cases."); *see also United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983), *cert. denied*, 465 U.S. 1108 (1984) (noting that

the "general rule" that jointly indicted defendants are to be jointly tried "applies with particular force to conspiracy cases"), and are heavily favored in this Circuit. *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). Even in cases that do not involve allegations of a conspiracy, joint trials provide the advantages of preserving judicial resources and promoting consistent verdicts. *Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987); *Gray*, 173 F. Supp. 2d at 6 (citing *United States v. Edelin*, 118 F. Supp. 2d 36, 40 (D.D.C. 2000) (Lamberth, J.)).

In this case, all defendants are charged as participants in a narcotics conspiracy and a RICO conspiracy and all defendants except Plummer are charged in the counts alleging use of a communication facility in relation to drug trafficking. Additionally, nearly all defendants are charged in other counts – firearms offenses, stolen vehicle trafficking, and murder-related charges – allegedly relating to the narcotics and RICO conspiracies. While each defendant's alleged role in the overall scheme may vary, both in terms of the quantity and seriousness of the crimes with which he is charged, all counts relate either directly or indirectly to the underlying conspiracy. That is, the individual charges were allegedly committed in furtherance of the enterprise itself and in relation to the crimes being committed by other co-conspirators in furtherance of the enterprise itself.

Neither case law nor Rule 8(b) supports the idea that joinder is only proper, in a conspiracy case involving an ongoing and wide-ranging criminal enterprise, when each alleged criminal act is directly in furtherance or consequence of every other alleged crime. Rather, the common thread is the conspiracy itself. In a conspiracy, co-conspirators engage in acts or transactions that form a "series of acts or transactions" as required under Rule 8(b). Thus, there is a "logical relationship between the acts or transactions within the series" that forms the basis

for joinder. *Nicely*, 922 F.2d at 853. Accordingly, this Court finds that defendants were properly joined under Rule 8(b).

Even when defendants have been properly joined, the risk of unfair prejudice resulting from joinder may require a remedy. The remedy suggested by defendants, severance, shall be discussed next.

B.  Severance of Defendants

The discretion to sever defendants to avoid the risk of unfair prejudice is governed by Federal Rule of Criminal Procedure 14(a), which reads:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a). In general, severance will be denied unless defendants can demonstrate substantial prejudice to their rights. *Zafiro v. United States,* 506 U.S. 534 (1993). "Substantial prejudice" is defined as a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539 (*quoted in Edelin*, 118 F. Supp. 2d at 41; *Gray*, 173 F. Supp. 2d at 6). Even though joinder generally is preferred in conspiracy trials, courts have expressed concern for the prejudice inherent therein, *see, e.g., United States v. Mardian*, 546 F.2d 973, 977 (D.C. Cir. 1976), and the risk may be greater when the conspiracy alleges disparate crimes and smaller sub-conspiracies. *Kotteakos v. United States*, 328 U.S. 750, 773 (1946).

The trial judge enjoys broad discretion to determine whether prejudice exists, and if so, what remedy is appropriate. *Zafiro,* 506 U.S. at 538-39 (citing *United States v. Lane*, 474 U.S.

438, 449 n.12 (1986)); *see also United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987) (noting that the "trial judge is given great latitude to balance the institutional benefits that joint trials confer . . . against the possibility that . . . the jury [will] be either confused or prejudiced in assessing the evidence against that particular defendant"). Other, less intrusive remedies such as additional jury instructions are preferred over severance. To prevail on a motion for severance, a relatively drastic measure, defendants face a "heavy burden": they must show that the threatened prejudice exists and can be remedied by severance alone. *Gray*, 173 F. Supp. 2d at 7 (citing *Edelin*, 118 F. Supp. 2d at 42 (citing *United States v. Causey*, 185 F.3d 407, 416 (5th Cir. 1999))); *see also United States v. West*, 877 F.2d 281, 287-88 (4th Cir.), *cert. denied*, 493 U.S. 869 (1989).

In this case, as noted above, defendants have already been separated into two trial groups. Some severance was necessary, given the physical limitations of the courtroom and hardship on the jurors, defendants, and this Court. A defendant is not entitled to severance merely because he might have a better chance of acquittal if he were tried separately. *United States v. Halliman*, 923 F.2d 873, 884-85 (D.C. Cir. 1991) (quoting *United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989), *cert. denied*, 493 U.S. 1062 (1990)). Rather, the showing required to prevail on a motion for severance is that joinder would result in unfair prejudice that would violate the defendant's constitutional fair trial rights or would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (*quoted in Gray*, 173 F. Supp. 2d at 10) (*cited in Edelin*, 118 F. Supp. 2d at 41).

Defendants argue that the disparity in the evidence between their alleged participation and that of their co-defendants is so great as to impede the jury's ability to compartmentalize the evidence and avoid ascribing one defendant's alleged crimes to another. In some circumstances,

severance is appropriate when there is a dramatic imbalance in the evidence against defendants. *United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (finding improper prejudice resulting from a joint trial against defendants charged with "grossly disparate" crimes). The fact that some defendants were "kingpins" or leaders and others were less active in a conspiracy, however, does not defeat the presumption that joinder is appropriate. *Gray*, 173 F. Supp. 2d at 10-11 (citing *Edelin*, 118 F. Supp. 2d at 43). With these considerations in mind, this Court shall review each defendant's circumstances to evaluate the risk that the current trial groupings will result in unfair prejudice.

      1.  <u>Trial Group One: Defendants Miller, Thomas, Moore and Bryant</u>

The first trial group is comprised of defendants Miller, Thomas, Moore and Bryant. All except Miller contest the grouping. Since defendants Thomas, Moore and Bryant are not charged with violent crimes or stolen vehicle trafficking, they claim that being associated with those charges by virtue of a joint trial with Miller unfairly prejudices their rights. They question the jury's ability to separate the evidence of violence from the other evidence and defendants, and claim that the nature of the charges is such that limiting instructions would be ineffective to cure the prejudice. (Bryant's First Mot. ¶ 4; Bryant's Second Mot. 4; Thomas' First Mot. 3-4.)

All of the defendants in Trial Group One are charged in the narcotics conspiracy (Indictment 3-40), the RICO conspiracy (*id.* at 41-70), and in the counts alleging use of a communications facility to facilitate possession with intent to distribute narcotics (*id.* at 78-82). All Group One defendants except Bryant are also named in additional counts. (*Id.* at 71-77; 83-94.) Specifically, defendants Thomas and Miller are charged with conspiracy to commit murder and murder conspiracy in aid of racketeering activity. (*Id.* at 91-93.) Defendant Moore is named

in the firearms offenses.  (*Id.* at 91-93.)  Finally, defendant Miller is charged in the additional counts of continuing criminal enterprise, several counts of possession with intent to distribute narcotics; and distribution of narcotics.  (*Id.* at 71-72; 74-76.)

Defendants are correct that the charges reflect that defendants' alleged crimes varied in type and degree.  Defendants allegedly "played numerous interchangeable roles based upon the needs of the conspiracy."  (Indictment 5; *see also id.* at 6-7.)  Clearly, this is not a case in which each defendant is alleged to have to engaged in conduct identical to that of every other co-defendant.  They are all alleged, however, to have engaged in various crimes in furtherance of a single activity: producing wealth by trafficking in narcotics and stolen vehicles.  (*Id.* at 4, 42.)  That is, the Government asserts that the crimes, while sometimes individually committed and disparate in type, are linked together because they were committed in furtherance of the overarching crime of conspiracy.  For example, the murder-related charges were included because the suspected motive was to protect the drug conspiracy.  (*Id.* at 91-93.)  Similarly, the firearms offenses allegedly relate to drug trafficking.  (*Id.* at 94.)  As such, they are related, and those defendants not charged with directly participating in the murder plot nonetheless may be implicated by their alleged involvement in the underlying conspiracy.

The fact that some defendants have a greater number of charges against them is not surprising, given the nature of conspiracy charges.  Some defendants were leaders, alleged to have held broader roles, while the activities ascribed to other defendants reflect a more limited position in the group.  Accordingly, the number and nature of the crimes vary among defendants.  This difference, in and of itself, does not require severance.  *Cf. Gray*, 173 F. Supp. 2d at 10-11 (noting that a trial of kingpins or leaders alongside lesser-involved defendants need not defeat the

presumption in favor of joinder of similar crimes) (citing *Edelin*, 118 F. Supp. 2d at 43).

The mere presence of allegations of violent crime does not inexorably require severance of those defendants not charged directly with violent crime. Disparity as to the violence alleged is generally only dispositive when it is combined with another factor, such as drastic differences in those charges. *See Sampol*, 636 F.2d at 647 (ruling that failure to sever was error where defendant, who was not even charged as part of the conspiracy, was tried on perjury and misprision charges along with defendants alleged to have engaged in an "extremely violent assassination scheme"). Another factor that may require severance, when combined with disparity of the violence alleged, is when the evidence against all defendants is integrated by trial procedures in such a way that it would be unrealistic to expect the jurors to be able to separate the potentially prejudicial crimes from the other charges. *See id.* at 643-45 (noting that unfair prejudice resulted from language in the indictment and witness testimony that intertwined the charges and defendants and thus was likely to confuse the jury).

In this case, the Court finds no basis for assuming that jurors will be unable to separate the charges and evidence against defendants Bryant, Thomas, Moore or Miller from that of their co-defendants. Since this case alleges a wide-ranging conspiracy that involved many different crimes, the jury will be asked to compartmentalize the evidence so as to ensure each defendant receives a fair trial. There is no reason to suspect that it would be unrealistic to expect the jury to consider the drug and conspiracy charges against each defendant, separately from the charges relating to murder, stolen vehicle trafficking and firearms that apply to only certain defendants. None of the alleged crimes are so dramatically disparate from the crimes alleged against each defendant to require severance. Nor will this Court permit evidence to be presented in a manner

that is likely to confuse the jury.

Similarly, this Court finds no basis for an argument that the inclusion of violent charges will unfairly prejudice defendants. Since the murder, stolen vehicle trafficking and firearms charges were allegedly committed in furtherance of the underlying conspiracies, it is not presumptively unfair for them to be presented in trials of those conspiracies, even if not all co-conspirators are charged with directly participating in those crimes. Moreover, all of the alleged crimes involve violence or the risk of violence, and the conspiracies were charged to involve a general willingness to use violence (Indictment 8; 42, 47) as well as many overt acts involving possession and use of deadly weapons (*id.* at 9-12, 40, 66-70). It cannot be said, therefore, that the inclusion of the explicitly violent charges relating to murder or firearms increases so greatly the inflammatory nature of the charges that defendants will be subject to unfair prejudice.

Finally, defendants' arguments that limiting instructions would be insufficient to cure any prejudice are wholly conclusory and without any factual basis. Defendants provide this Court with no support for a conclusion that a jury would be unable, with the benefit of carefully crafted limiting instructions, to consider each defendant's case separately. *Edelin*, 118 F. Supp. 2d at 42 ("Jury instructions are presumed to be effective.") (citing *Richardson v. Marsh*, 481 U.S. at 206).

In light of the lack of any extreme disparity in the charges and evidence, the lack of additional factors indicating any risk of juror confusion, and the lack of reason to doubt the effectiveness of limiting instructions, this Court finds that the evidence and charges against each defendant in Trial Group One – Thomas, as compared to his co-defendants Miller, Bryant and Moore; Bryant, as compared to his co-defendants Miller, Thomas and Moore; and Moore, as compared to his co-defendants Miller, Thomas and Bryant – do not create a disparity sufficient to

warrant severance.

    2.  <u>Trial Group Two: Defendants Eiland, Butcher, Ingram, Gaskins, Plummer</u>

Defendants in Trial Group Two, except Eiland, also request severance because the disparity of charges against them, they argue, creates a risk of unfair prejudice. Defendants claim that severance is necessary to cure the risk of unfair prejudice arising from the disparity in the number of charges and acts alleged against them, as well as the amount and weight of the evidence against them, as compared to the investigation and indictment. (Butcher's Mot. 8, 9, ¶¶ 2-5, 7, 10-19; Ingram's Mot. 5; Plummer's Mot. ¶¶ 2-4.)

Each defendant in this trial group is charged in the narcotics and RICO conspiracies. (Indictment 3-70.) They are also separately included in various other counts: defendant Butcher is charged in several drug-related substantive counts (*id.* at 75, 77, 82); defendant Ingram is named in several of the charges relating to drug possession with intent to distribute (*id.* at 79); defendant Plummer is charged in several counts relating to trafficking in stolen vehicles (*id.* at 84-85); and defendant Gaskins is charged with use of a communications facility to facilitate possession with intent to distribute narcotics (*id.* at 78-81). Defendant Eiland appears in a number of additional counts, including the continuing criminal enterprise (*id.* at 71-72), possession with intent to distribute narcotics (*id.* at 76); use of a communications facility to facilitate possession with intent to distribute narcotics (*id.* at 79-82); interstate trafficking in motor vehicles (*id.* at 85-88); and several murder-related charges (*id.* at 89-91).

As in Trial Group One, the charges as to the Trial Group Two defendants reflect a conception that, while each co-defendant was allegedly involved in the conspiracy, their roles varied. Defendant Eiland – along with defendant Miller in Trial Group One – is alleged to be the

kingpin or leader of the enterprise (*id.* at 5, 43), and accordingly has been charged in a greater number of counts and in some of the more serious counts. The argument cannot be fairly made that any defendant in the second trial group is accused of markedly different crimes than his co-defendants. The alleged roles of Ingram, Butcher and Gaskins (beyond those alleged in the conspiracy counts) are of the same type: they are all named in specific drug-related counts. Plummer is charged primarily (notwithstanding his inclusion in the conspiracy counts) in the stolen vehicle trafficking charges.

This Court first notes that the evidence in this case cannot fairly be characterized as disparate. Each defendant in this trial group is charged with serious crimes relating to drug trafficking, stolen vehicle trafficking, and/or murder. The disparity of charges alleged against each defendant, as compared to his co-defendants, is not so great that severance is mandated. *Cf. Sampol,* 636 F.2d at 642-47 (finding the crimes of co-defendants to be "grossly disparate" when a defendant charged with perjury and misprision of a felony was tried alongside defendants alleged to have conspired and committed several violent murders).

While this Court recognizes that stolen vehicle trafficking is an activity discrete from drug trafficking, it is allegedly intricately related to the RICO conspiracy, in which all defendants are charged. (Indictment 41-42.) Therefore, the charges related to stolen vehicle trafficking are not disparate from the other counts in the Indictment. The fact that some of the specific acts alleged against a defendant may have been committed individually and/or may be of a type that is disparate as compared to some of the other counts in the indictment, the overarching conspiracies provide a common thread through which all of the charges are intertwined.

Second, even were the evidence or charges disparate, it would not automatically indicate

15

a risk of prejudice that can be remedied only by severance. *See supra* Part II.B. Rather, disparity is relevant insofar as it is probative of the jury's ability to compartmentalize the evidence. *See, e.g., Sampol*, 636 F.2d at 646-47 (noting that because the evidence against co-defendants "so exceeded and varied from that which was necessary or relevant to" his charges, it was "unrealistic to expect a jury not to be influenced by such extraneous" evidence). Here, there is no extreme disparity in the charges or evidence, nor any reason to suspect that jurors will be unable to consider each defendant's case individually. Finally, as before, there is no reason to doubt the efficacy of jury instructions should they be necessary to cure the risk of unfair prejudice.

In light of these factors, this Court finds that the evidence and charges against each defendant in Trial Group Two – Ingram, as compared to his co-defendants Eiland, Butcher, Plummer and Gaskins; Butcher, as compared to his co-defendants Eiland, Ingram, Plummer and Gaskins; Plummer, as compared to his co-defendants Eiland, Ingram, Butcher and Gaskins; and Gaskins, as compared to his co-defendants Eiland, Ingram, Butcher and Plummer – do not create a disparity sufficient to warrant severance.

C.  Severance of Counts

Defendants also claim that the stolen vehicle charges have not been shown to be sufficiently related to the other counts to justify inclusion in one trial. (Bryant's First Mot. ¶ 3; Eiland's Mot. ¶¶ 6-10; Gaskins' Mem. P. & A. 7-8.) Defendant Eiland argues that the grand jury's conclusion that the stolen vehicle trafficking charges are related to the RICO conspiracy must have been the result of "guiding" by the United States; consequently, joinder cannot be evaluated without some indication of the circumstances under which the grand jury reached its conclusion. (Eiland's Resp. ¶¶ 5-6.) Bryant further argues that the firearms offenses must be

severed because they are not connected to the other defendants nor would such acts have been "reasonably foreseeable" to them. If these unrelated charges are presented against his co-defendants in the same trial, defendant Bryant argues that the jury will be unable to separate the charges and fairly consider Bryant's case. (*Id.* ¶¶ 6-7.)

This Court disagrees. As noted *supra* Part II.A, joinder of offenses under Rule 8(b) is satisfied by the face of an indictment alleging conspiracy. It is sufficient that the stolen vehicle trafficking and firearms charges were alleged to be directly involved in the RICO and narcotics conspiracies, respectively. These alleged conspiracies were extremely broad enterprises, involving a wide range of alleged activity. The charges are included in the indictment as parts of a series of acts or transactions and the Court will not disturb the indictment based on generalized and conclusory arguments of misjoinder.

As a final note, even though this Court has determined that currently no prejudice exists which warrants severance, it will continue to monitor the risk of prejudice as the trial progresses. *Schaffer v. United States*, 362 U.S. 511, 516 (1960) (noting that "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear").

### III. CONCLUSION

For the foregoing reasons, active defendants' motions [254, 262, 268, 271, 290, 325, 420, 424, 426, 427, 430] to sever co-defendants and/or counts shall be DENIED; inactive defendants' motions [272, 273] to sever defendant and counts shall be DENIED AS MOOT; defendants' motions [269, 275, 429] to join in the ripe motions of their co-defendants shall be GRANTED; and defendants' motions [288, 326] for leave to late file severance-related motions shall be GRANTED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, December 7, 2005.