## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 04-379 (RCL)** |
| **GERALD EILAND, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on the pre-trial motions of defendants.  The motions

fall into several different categories: motions relating to discovery; motions to dismiss; motions

to join or adopt the motions of co-defendants; motions for leave to late file; motions to suppress

or for a *Franks* hearing; and other miscellaneous motions.

First, several defendants filed motions relating to discovery matters.  Defendant Eiland

filed, on February 3, 2006, the following motions: a Request [520] for Notice of Government's

Intention to Use Rule 404(b) Evidence at Trial; a Motion [523] for Disclosure of Co-Defendant

Statements Pursuant to *United States v. Bruton*; and a Motion [524] to Compel Disclosure of

Information Regarding Confidential Informants, Witnesses & Cooperating Criminals.  Defendant

Eiland also filed two motions [346, 526], on August 2, 2005 and February 3, 2006, respectively,

Requesting the Names of Counsel Who Represent Government Witnesses.  Defendant Thomas

filed, on February 6, 2006, the following motions: a Motion [537] for Bill of Particulars; a

Motion [538] to Compel Disclosure of Evidence Subject to Suppression Under Fed. R. Crim. P.

12(b)(3); a Motion [540] for Disclosure of Favorable Evidence Against Witnesses not Called by

the Government; a Motion [541] to Disclose Identity of Confidential Informants; a Motion [542]

to Disclose All Instances Where Witnesses Were Interviewed Jointly; a Motion [543] for

Discovery of Statements of Co-Defendants and Co-Conspirators; a Motion [546] for Early

Release of Jencks, *Brady & Giglio* Material; a Motion [549] for Disclosure of Government's

Intention to Introduce 404(b) Evidence at Trial; a Motion [550] for Notice of Government's

Intention to Invoke Residual Hearsay Exception Under Rule 803(24); and a Motion [578]

Compel Disclosure of Witness Exposure to Wiretap Evidence.

Defendant Miller filed, on February 6, 2006, two Motions [530, 532] to Compel Pretrial

Production of Co-Defendant Statements that Arguably Implicate Him; defendant Miller also

filed, on April 25, 2005, a Motion [211] for Bill of Particulars; defendant Plummer filed, on

February 2, 2006, a Motion [518] to Disclose Identity of Informants; defendant Moore filed, on

January 30, 2006, a Motion [502] to Direct the Government to Provide Notice of its Intention to

Rely on Other Crimes, Wrongs, Acts & Misconduct Evidence; defendant Moore also filed, on

November 18, 2004, a Motion [151] for Bill of Particulars or to Dismiss; defendant Butcher

filed, on February 6, 2006, a Motion [535] for Notice Regarding Intrinsic Evidence; a Motion

[555] for Pretrial Ruling on the Admissibility of Conspirator Statements and for Disclosure of

Those Statements; and, on September 30, 2005, a Motion [393] for Discovery of Statements by

and Identities of Government Informers.  Defendant Ingram filed, on January 26, 2006, a Motion

[499] for an Order Directing the Government to Provide Impeachment Evidence as to All

Hearsay Declarants; defendant Gaskins filed, on January 25, 2006, a Motion [491] for Disclosure

of 1006 Summaries; and, on September 17, 2005, a Motion [386] for 404(b) Evidence; and

defendant Bryant filed, on November 3, 2005, a Motion [419] for 404(b) Evidence.

Second, defendant Thomas filed, on February 6, 2006, three motions requesting dismissal

2

of counts, evidence and/or the indictment: a Motion [544] to Dismiss Counts & Overt Acts of

Indictment Due to Improper Language; a Renewed Motion [545] to Dismiss Fourth Superseding

Indictment or, in the Alternative, for Release of Grand Jury Ministerial Records; and a Motion

[548] to Dismiss Due to Lost or Destroyed Evidence.

Third, several defendants moved to join or adopt the motions of their co-defendants.

Defendant Butcher filed, on January 30, 2006, a Motion [508] for Leave to Join Co-Defendants'

Motions; on February 6, 2006, a Motion [533] to Join Co-Defendants' Motions; and on February

23, 2006, a Third Motion [581] to Join Co-Defendants' Motions.  Defendant Eiland filed, on

February 3, 2006, a Request [525] to Adopt Motions of Co-Defendants; and, on February 15,

2006, a Notification [566] to the Court of Co-Defendant Motions that He Seeks to Adopt.

Defendant Gaskins filed, on February 6, 2006, a Motion [536] for Leave to Adopt & Join

Motions of Co-Defendant Eiland; on February 7, 2006, a Motion [556] for Leave to Adopt &

Join Motions of Co-Defendant Thomas and a Motion [557] for Leave to Adopt & Join Motions

of Co-Defendant Butcher; and, on June 5, 2005, a Motion [296] to Join Co-Defendant Simon's

Motion [291] for Disclosure of Confidential Informants and Exculpatory Information.  Defendant

Ingram filed, on February 7, 2006, a Motion [558] for Leave to Adopt & Join Particular Motions

Filed by Co-Defendants; defendant Moore filed, on February 15, 2006, a Motion [565] for Leave

to Adopt & Join Motions Filed by Co-Defendants; defendant Plummer filed, on February 2,

2006, a Motion [517] to Join & Adopt Certain Motions Filed by Co-Defendants; and defendant

Thomas filed, on February 6, 2006, a Motion [547] for Leave to Join Co-Defendant Motions.

Fourth, several motions were filed requesting leave of the Court to late file.  Defendant

Miller filed, on February 5, 2006, a Motion [529] for Leave to File Defendant's Motions Out of

Time.  The United States filed, on February 14, 2006, a Motion [564] for Extension of Time in

Which to File Responses to Defendants' Pretrial Motions and for Other Motions Procedures; and

on February 22, 2006, a Motion [576] for Leave to File Opposition to Defendant Moore's

Supplemental Motion, Time for Filing Having Expired.

Fifth, defendants filed several motions requesting that evidence be suppressed, or that a

*Franks* hearing be held.  Defendant Eiland filed, on February 3, 2006, a Motion [521] to

Suppress Evidence Seized from 2801 Park Center Drive, Apt. A604 and a Motion [522] to

Suppress Evidence Seized from a 2003 Chevrolet Conversion Van.  Defendant Miller filed, on

February 6, 2006, a Motion [531] to Suppress Evidence; defendant Moore filed, on November

11, 2005, a Motion [425] to Suppress Evidence or for *Franks* Hearing; and, on January 26, 2006,

a Supplemental Motion [497] to Suppress or for a *Franks* Hearing; defendant Thomas filed, on

February 6, 2006, a Motion [539] for Suppression of Consensual Calls and a Motion [551] to

Suppress Tangible Evidence; and defendant Gaskins filed, on January 25, 2006, two Motions

[490, 492] to Suppress Physical Evidence.

Sixth, several motions relating to miscellaneous matters were filed.  Defendant Miller

filed, on February 6, 2006, a Motion [534] to Sever Defendants;[1] defendant Moore filed, on

January 30, 2006, a Motion [503] for Recusal; on February 16, 2006, a Motion [567] to Proceed

*Pro Se* with the Assistance of Standby Counsel; and, on January 26, 2006, a Motion [498] to

Transfer Due to Prejudicial Publicity; defendant Thomas filed, on February 6, 2006, a Motion

[552] for Implementation of Trial Procedures and a Motion [553] *in Limine* Regarding

---

[1] While defendant Miller's Motion is titled "Defendant Christian Byrd's Motion to Sever Defendants," the Court assumes that the name of another defendant in the title is the result of a typographical error; accordingly, it shall consider the motion as it applies to defendant Miller.

Admission of Wiretap Calls.

The United States filed an Omnibus Opposition [568] to defendants' pre-trial motions on February 17, 2006, and defendants Gaskins [574] and Thomas [575] filed replies thereto on February 19, 2006 and February 22, 2006, respectively.  The Government also filed, on February 22, 2006, a Supplemental Opposition [577] to Defendant Moore's Supplemental Motion to Suppress; on January 30, 2006, a Consolidated Notice [507] Regarding Rule 609 Evidence; and, on March 1, 2006, a Supplement [589] to its Omnibus Response.  Defendant Gaskins filed, on February 6, 2006, an Opposition [554] to the Government's Consolidated Notice [507] Regarding Rule 609 Evidence.  The Government had previously filed, on October 19, 2005, an Opposition [409] to Defendant Butcher's Motion to Compel Disclosures Regarding Government Informers, to which defendant Butcher filed a Reply [418] on November 3, 2005.  All parties appeared before this Court for a hearing on February 23-24, 2006.

Upon a thorough review of each party's filings, the applicable law and the entire record herein, this Court has determined that all motions [296, 508, 517, 536, 547, 556, 557, 558, 565, 566, 581] to join or adopt specified motions of co-defendants shall be GRANTED; defendant Eiland's motion [525] to join or adopt unspecified motions of co-defendants shall be DENIED; defendant Butcher's Motion [533] to join shall be GRANTED IN PART as to those motions he specifies, and DENIED IN PART as to his general request to join all motions for which he has standing; all motions [529, 564, 576] for leave to late file shall be GRANTED; two motions [491, 538] relating to discovery shall be GRANTED; all other motions relating to discovery [151, 211, 346, 386, 393, 419, 499, 502, 518, 520, 523, 524, 526, 530, 532, 535, 537, 540, 541, 542, 543, 546, 549, 550, 555, 578] shall be DENIED; all motions to dismiss [151, 544, 545, 548]

shall be DENIED; all motions [425, 490, 492, 497, 521, 522, 531, 539, 551] to suppress or for a *Franks* hearing shall be DENIED.

As to the miscellaneous motions, defendant Miller's Motion [534] to Sever Defendants shall be DENIED; defendant Moore's Motion [503] for Recusal shall be DENIED; defendant Moore's Motion [498] to Transfer Due to Prejudicial Publicity shall be DENIED; and defendant Thomas' Motion [553] *in Limine* Regarding Admission of Wiretap Calls shall be DENIED. Defendant Moore's Motion [567] to Proceed *Pro Se* with the Assistance of Standby Counsel shall be GRANTED; and defendant Thomas' Motion [552] for Implementation of Trial Procedures shall be GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

The defendants are charged in a 96-count Fourth Superseding Indictment ("Indictment"). All nine defendants currently pending trial are charged in Count One, Narcotics Conspiracy and in Count Two, RICO Conspiracy.  Defendants Eiland and Miller are charged also in Count Three, Continuing Criminal Enterprise.  At least one but not all remaining defendants are also charged with the following: possession with intent to distribute narcotics (Counts 8-9, 11-13, 15-16); distribution of narcotics (Count 10); use of a communications facility to facilitate possession with intent to distribute narcotics (Counts 17-76); interstate trafficking of stolen motor vehicles (Counts 77-89); conspiracy to commit murder (Count 90, 93); first degree murder as accessory after the fact (Count 91); accessory to murder after the fact (Count 92); murder conspiracy in aid of racketeering activity (Count 94); and firearms offenses (Counts 95-96).  The defendants have been separated into two groups for trial: the first shall commence on March 6, 2006 and the second begins on September 6, 2006.

## II.  DISCUSSION

A.    *Motions Relating to Discovery Matters*

    1.    *Motions Requesting Notice of Government's Intention to Use 404(b) Evidence*

Defendants Gaskins [386], Bryant [419], Moore [502], Eiland [520], Thomas [549] each

filed motions requesting disclosure of the Government's intention to use 404(b) evidence at trial.

In addition to requesting notice of the intended use of such evidence, they also request that the

evidence be limited to rebuttal or excluded altogether due to its prejudicial effect.  (Gaskins'

Mot. [386] 1-3; Bryant's Mot. [419] ¶¶ 1-4; Moore's Mot. [502] ¶¶ 1-6; Eiland's Mot. [520] 1-3;

Thomas' Mot. [549] 1-3.)  The Government asserted that the evidence that it seeks to admit at

trial will not fall within the ambit of Rule 404(b).  (Govt.'s Omnibus Opp'n 35.)  Evidence of

defendants' uncharged criminal conduct will be admissible to prove the conspiracies and

offenses committed in furtherance thereof.  (*Id*.)  As such, the acts are "inextricably intertwined"

with the charged crime; and as a result are not subject to Rule 404(b) analysis.  (*Id*.)

Rule 404(b) is intended to prevent the admission of evidence of other crimes, wrongs or

bad acts that have no evidentiary bearing on the charges at issue when such are admitted for the

purpose of demonstrating the bad character of the defendant.  The rule excludes only that

evidence that is "extrinsic" or "extraneous" to the charged crime.  *United States v. Badru*, 97

F.3d 1471, 1474 (D.C. Cir. 1996).  Evidence is not considered extrinsic or extraneous "if it is

inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to

complete the story of the crime . . . ."  *Badru*, 97 F.3d at 1474 (citing *United States v. Weeks*, 716

F.2d 830, 832 (11th Cir. 1983)).  "As long as evidence of the uncharged criminal conduct is

offered as direct evidence of a fact in issue, and not as circumstantial evidence of the character of

the accused, it is admissible independent of its superficial similarity to that which would be

considered evidence of 'other crimes' under Rule 404(b)." *United States v. Gray*, 292 F. Supp.

2d 71, 77-78 (D.D.C. 2003) (Lamberth, J.) (citing *Badru*, 97 F.3d at 1475 (citing 22 CHARLES A.

WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239 at 450

(1978))).

In this case, the Government stated that the evidence it will introduce at trial does not fall

under the definition of Rule 404(b).  (Govt.'s Omnibus Opp'n 35.)  Although it intends to

introduce evidence of defendants' criminal wrongdoing that does not relate directly to other

incidents charged in the indictment, as long as that evidence is offered to prove the existence of

the conspiracy rather than a defendant's propensity to commit crimes, it will not fall under Rule

404(b).  *Badru*, 97 F.3d at 1475.  The Government has indicated that, should it seek to introduce

evidence falling under Rule 404(b), it will notify the Court and opposing counsel.  Accordingly,

defendants' motions shall be DENIED.

2.    *Motions Requesting Disclosure of Rule 801(d)(2)(E) Statements*

Defendants Eiland [523] and Miller [530, 532][2] request that the Government be required

to disclose statements made by co-defendants in this matter.  Defendant Miller also moves to

suppress any such statements.  Defendant Thomas [543] seeks the same and also any statements

made by co-conspirators.  Defendant Butcher [555] seeks disclosure of co-conspirator statements

and requests a pretrial hearing to determine their admissibility.  Defendants Ingram [499] and

Thomas [540] request that the Government disclose any evidence that impeaches witnesses

---

[2] While defendant Miller filed two separate motions, they are identical.  Cited page numbers, therefore, may refer to either.

whose testimony will be introduced pursuant to Rule 801(d)(2)(E).

As to statements by co-defendants, defendants argue that, since such statements cannot be introduced in a joint trial where the declarant does not take the stand, the Government must disclose its intention to use any such statements before trial so that opposing counsel may have the opportunity to litigate any limitations on the admissibility of such statements. (Eiland's Mot. [523] ¶¶ 1-4; Miller's Mot. [530, 532] 1-2.) Defendants Thomas and Butcher request disclosure of statements by co-conspirators (and co-defendants, in defendant Thomas' motion) that the Government intends to introduce under Rule 801(d)(2)(E). (Thomas' Mot. [543] 1-2; Butcher's Mot. [555] ¶¶ 1-7.) In the interest of judicial economy and reducing the likelihood of a mistrial, defendant Butcher argues, the statements' admissibility must be determined before trial. (Butcher's Mot. [555] ¶¶ 4-7.) Finally, defendants Ingram and Thomas also argue that, in order to prepare impeachment, the Government should disclose before trial any evidence that would impeach hearsay declarants whose statements are admitted under Rule 801(d)(2)(E). (Ingram's Mot. [499] 1-3; Thomas' Mot. [540] 1.)

The Government contends that *Bruton* only applies to statements by co-defendants that expressly implicate other defendants. (Govt.'s Omnibus Opp'n 29.) Furthermore, the Government notes, while *Bruton* applies to statements that lack other basis for admission, it has no relevance for statements admitted under one of the exceptions to the hearsay rules. (*Id.*) The Government represents that it will seek to admit only those statements that have an independent basis for admissibility. (*Id.* at 30.) Similarly, the Government asserts that it is not required to disclose co-conspirator statements prior to trial other than as required by the Jencks Act or *Brady*. (*Id.* at 31.) As to defendants' request for a pretrial determination of admissibility of

co-conspirator statements under Rule 801(d)(2)(E), and their request for pretrial disclosure of impeachment evidence of any such declarants, it is the Government's position that neither must occur in advance of trial.  (*Id.* at 32, 47.)

As to defendants' request for disclosure of *Bruton* statements, this Court finds that the request is moot, since the Government does not intend to attempt to introduce evidence prohibited under Bruton.  As to other statements and impeachment evidence, this Court finds no basis for requiring pretrial disclosure of those statements.  The Government is not generally required to disclose co-conspirator statements or impeachment evidence for hearsay declarants, nor is there reason for the Court to engage in a pretrial determination of whether Rule 801(d)(2)(E) is satisfied, before trial begins.  *See United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988) (approving district court's rejection of defendant's request for pretrial discovery of co-conspirator statements as being without authority under the Federal Rules or the Jencks Act).  Accordingly, defendants' motions requesting pretrial disclosure and determination of admissibility of co-defendant and co-conspirator statements, and their motions requesting pretrial disclosure of impeachment evidence for hearsay declarants, shall be DENIED.

3.    *Motions for Disclosure Relating to Confidential Informants*

Defendants Simon[3] [291], Butcher [393], Eiland [524], Plummer [518], and Thomas [541] have requested information regarding confidential informants.  Defendant Eiland requests the investigating agency's internal file on each informant so that he might be able to identify the individuals and know what benefits they might receive in exchange for their testimony.  (Eiland's

---

[3] Although defendant Simon is no longer an active defendant in this case, and this motion has since been terminated, his motion will be considered as it applies to defendant Gaskins, who moved [296] to join the motion.

Mot. [524] 2-4.)  Defendants state that the Government's failure to disclose this information will hamper preparation of the defense.  (Eiland's Mot. [524] 2; Plummer's Mot. [518] 5; Simon's Mot. [291] 6.)  Defendant Butcher requests disclosure of any exculpatory statements.  (Butcher's Mot. [393] 1, 6; Butcher's Reply [418] ¶ 7.)  Defendant Thomas asserts that the Government is required to produce all confidential informants and allow him to interview them before trial.  (Thomas' Mot. [541] 1-3.)  In the alternative, defendant Thomas requests that the Court hold an *in camera* hearing to determine whether any informant's testimony might be helpful and material to the defense.  (*Id.* at 3-4.)  Defendant Thomas also requests that 20 pieces of information relating to each informant be disclosed prior to trial.  (*Id.* at 5-7.)

The Government opposes disclosure on the grounds that it is privileged from doing so.  (Govt.'s Omnibus Opp'n 43.)  It argues that, in light of the public interest in protecting informants' safety, pretrial disclosure of their identities should be mandated only when it is necessary and relevant to the defense.  (*Id.*; Govt.'s Opp'n [409] 2.)  It also notes that none of the prospective testimony of the informants is exculpatory.  (Govt.'s Omnibus Opp'n at 44.)

This Court finds that defendants have not provided a basis to compel disclosure of the identities of confidential informants, or of other the information requested.  Under the balancing test mandated by *Roviaro v. United States*, 353 U.S. 53, 62 (1957), defendants have not shown that their need for the information outweighs the danger to informants, were their identities revealed.  *See United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994).  Since there is no indication that any informant has provided information that would be exculpatory to defendants, defendants' need for the information is not substantial.  *See id.* at 654-55 (noting that mere speculation of exculpatory testimony "cannot overcome the Government's strong interest in

11

preserving the confidentiality" of an informant).  Moreover, the dangerous nature of the crimes

with which defendants are charged increases the danger to informants whose identities are

revealed.  The Government has assured the Court and defense counsel that it will disclose all

necessary information, should circumstances arise that mandate disclosure, either before or

during the trial.  This Court is satisfied that the Government's effort is sufficient to satisfy its

obligations as to disclosure of confidential informants.  Defendants' motions for disclosure,

therefore, shall be DENIED.

> 4.     *Motions for Bills of Particulars and for Disclosure of Intrinsic Evidence*

Defendants Moore [151], Miller [211], Simon [291][4] and Thomas [537] request an order

directing the Government to provide a bill of particulars.  Defendants argue that the vagueness

with which the Government described the acts charged prevent them from preparing a defense.

(Moore's Mot. [151] 6; Simon's Mot. [291] 8; Thomas' Mot. [537] 1-3.)  Defendant Butcher

[535] requests that the Government reveal any acts not specifically alleged in the indictment that

it will seek to introduce at trial.  (Butcher's Mot. [535] 1.)  Failure to do so, he asserts, will

deprive him of the ability to prepare a defense.  (*Id.* at 2.)

The Government maintains that the broad and detailed indictment as well as extensive

discovery already provided to the defense are sufficient to permit defendants to prepare for trial.

(Govt.'s Omnibus Opp'n 38.)  According to the Government, the circumstances under which a

bill of particulars is required – namely, a lack of precision as to charged offenses – are simply not

present here.  (*Id.* at 38-42.)

---

[4] As noted *supra* note 3, although defendant Simon is no longer an active defendant in this case, his motion shall be considered as it applies to defendant Gaskins, who moved [296] to join the motion.

This Court finds that defendants' requests are without merit.  A bill of particulars is necessary when the existing documents fail to provide sufficient detail for defendants to "understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges."  *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).  Here, defendants have been provided with voluminous information, including great detail, about the charges that have been brought against them.  The indictment in this case is extremely specific, providing more than 200 factual statements alleged as overt acts and 30 racketeering acts. Similarly, extensive discovery has been made available to defendants, including many recordings, images, documents and reports.  Defendants have provided no basis for requiring further disclosure at this point.  Accordingly, their motions for bills of particulars and for disclosure of intrinsic evidence shall be DENIED.

   5.   *Requests for Disclosure of Counsel Representing Government Witnesses*

Defendant Eiland filed two motions [346, 526] requesting that the Government be required to disclose the names of attorneys representing government witnesses whose names are provided by defense counsel.  He states that it is difficult and time-consuming to obtain this information by other means.  The Government objects to his request on the grounds that it would permit defendants to confirm the identities of government witnesses.  (Govt.'s Omnibus Opp'n 45.)  Further, the Government notes that defendants may obtain the information from court dockets or by limited questioning of the suspected witness.  (*Id*. at 45-46.)

This Court agrees with the Government.  The safety of government witnesses must be protected, and the Government generally may withhold their identities to that end.  There is no basis for finding that defendants are in great need of the information, nor are they unable to

obtain it by methods that present less danger to the witnesses.  Accordingly, defendants Eiland's

motions to compel disclosure of counsel who represent government witnesses shall be DENIED.

     6.     *Motion to Compel Disclosure of Evidence Subject to Suppression Under 12(b)(3)*

     Defendant Thomas moves [538] to compel the Government to notify him of any evidence

it intends to introduce at trial that may be subject to a motion to suppress under Fed. R. Crim. P.

12(b)(3).  The Government made no response to defendant Thomas' motion.  As a general

matter, this Court notes that the Government is obligated to provide all such evidence to

defendants for purposes of discovery.  To the extent that the Government has not done so, it will

be directed to comply.  Accordingly, defendant Thomas' motion shall be GRANTED.

     7.     *Motions to Disclose Witnesses' Exposure to Other Testimony or Evidence*

     Defendant Thomas moves [542] for an order requiring disclosure of any instances in

which witnesses were present for the testimony of another, such as in a joint interview.

(Thomas' Mot. [542] 1.)  The Government objects on the grounds that there is no authority for

such a disclosure request pertaining to pretrial interviews, and also represents that, in any event,

no joint substantive interviews were conducted.  (Govt.'s Omnibus Opp'n 46.)  Based on the

Government's statement that no such interviews took place, defendant Thomas' motion shall be

DENIED AS MOOT.

     In a separate motion [578], defendant Thomas requests disclosure of witnesses who have

been exposed to wiretap evidence.  The basis for this motion is the Government's statement in its

Omnibus Opposition that the reliable source cited in an affidavit might have overheard

conversations via wiretap rather than personally.  The Government stipulated in court, however,

that the source to which the affiant referred was a member of law enforcement, not a civilian witness.  Accordingly, defendant Thomas' motion shall be DENIED.

> 8.      *Motion for Early Release of Jencks,* Brady & Giglio *Material*

Defendant Thomas requests [546] that the Government release, in order to promote judicial economy, any and all Jencks, *Brady* and *Giglio* material for all government witnesses prior to the start of trial.  (Thomas' Mot. [546] 1.)  The Government cites security concerns in its opposition to the motion.  (Govt.'s Omnibus Opp'n 47.)  It proposes instead that this information be released to defense counsel the Thursday prior to each witness is expected to testify.  (*Id.* at 48.)

The Court is mindful of the security concerns attendant in a trial such as this one.  Where the Court has already taken note of the need to protect the jury, the same factors justify protection of government witnesses.  The Court finds that the Government's proposal is reasonable given the Government's strong interest in protecting witnesses' identities as balanced against defendants' interest in pretrial discovery.  *See United States v. Edelin*, 128 F. Supp. 2d 23, 31 (D.D.C. 2001) (Lamberth, J.) (citing *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir.1983)).  Accordingly, defendant Thomas' request for pretrial disclosure of this material shall be DENIED.

> 9.      *Motion for Notice of Intention to Invoke Residual Hearsay Exception*

Defendant Thomas [550] requests notice of the Government's intention to offer any statements that, while not specifically excepted from the hearsay rules, allegedly have equivalent circumstantial guarantees of trustworthiness.  (Thomas' Mot. [550] 1.)  Such statements would be offered under Rule 803(24).  The Government responds that it does not intend to introduce any such evidence, and that it will notify defense counsel should its intentions change.  (Govt.'s

15

Omnibus Opp'n 34.)  Accordingly, defendant Thomas' motion shall be DENIED AS MOOT.

   10.    *Motion for Disclosure of Rule 1006 Summaries*

   Defendant Gaskins [491] moved for disclosure of charts, summaries or calculations the Government intends to use at trial.  The Government responded that it "is in the process of preparing one summary exhibit which incorporates a timeline of major events in this case with selected wiretap intercepts," and will provide the same to counsel upon completion.  (Govt.'s Omnibus Opp'n 49.)  Since this motion is essentially undisputed, Gaskins' motion shall be GRANTED.

B.   *Motions to Dismiss*

   1.    *Motion to Dismiss Counts & Overt Acts of Indictment Due to Improper Language*

   Defendant Thomas moves [544] to dismiss counts and overt acts of the indictment that relate to the identification of Tyrone Thomas as a co-conspirator when he had become a government agent.  (Thomas' Mot. [544] 1; Thomas' Reply [574] 6-8.)  This mislabeling of Tyrone Thomas will result in prejudice to defendant Thomas, he argues, because the jury will ascribe more weight to Tyrone Thomas' testimony than is warranted.  (Thomas' Mot. [544] 2; Thomas' Reply [574] 8.)

   The Government notes that Tyrone Thomas continued to be labeled as a co-conspirator for the sake of consistency, and because the information he provided was based primarily on his role as a co-conspirator.  (Govt.'s Omnibus Opp'n 55.)  Moreover, it contends, no prejudice results from the labeling, and defense counsel will have the opportunity to clarify Tyrone Thomas' two roles and the impact it might have on the jury's evaluation of his testimony.  (*Id.*)

   This Court finds that the labeling of Tyrone Thomas as a co-conspirator after the point

when he had become a government informant does not mandate dismissal of the counts or overt

acts connected with such labeling.  Any significance of the label may be explained by defense

counsel.  As it stands in the indictment, however, it does not represent prejudice to defendant

Thomas that would require dismissal.  Accordingly, defendant Thomas' motion shall be

DENIED.

 2. *Renewed Motion to Dismiss Indictment or for Grand Jury Ministerial Records*

 Defendant Thomas moves [545] to dismiss the Fourth Superseding Indictment or, in the

Alternative, for Release of Grand Jury Ministerial Records.  In the few months since the Court

denied his prior motion on this point, he claims that his renewed request is justified by new

information about a grand jury leak and about the circumstances under which the grand jury was

extended.  (Thomas' Mot. [545] 1.)  The Government, in objecting to the motion, notes that

defendant Thomas has failed to explain how either circumstance results in prejudice to him.  The

Court agrees.  Defendant Thomas' motion presents no new basis for his argument, and no new

facts have arisen that justify a renewed inquiry into the matter.  Accordingly, this Court's denial

of his original motion remains dispositive.  Accordingly, for the reasons explained in the Court's

October 26, 2005 Memorandum Opinion, defendant Thomas' motion shall be DENIED.

 3. *Motion to Dismiss Charges and Counts Relating to Lost or Destroyed Evidence*

 Defendant Thomas requests [548] that all charges and counts relating to evidence that is

no longer available should be dismissed, or in the alternative, that the Government should be

prevented from presenting evidence that was not subject to review by defendant.  (Thomas' Mot.

[548] 1-2.)  Specifically, defendant Thomas refers to a vehicle, allegedly owned by him, that was

subject to a sweep for illegal narcotics while in police custody.  (*Id.* at 1.)  Since the Government

has indicated that the vehicle is no longer available, defendant Thomas has had no opportunity to review the evidence or conduct his own tests.  (*Id.*)  For this reason, he suggests that any charges arising from this evidence should be dismissed, or, at a minimum, that the Government should be ordered not to present any such evidence.  (*Id.* at 2.)

The Government responds that defendant Thomas has failed to show that the loss of the evidence was in bad faith, and as a result, has failed to provide any basis for dismissal of related counts or charges.  (Govt.'s Omnibus Opp'n 56-57.)

Absent a showing of bad faith, failure of the police to preserve potentially useful evidence is not a violation of a defendant's constitutional right to due process.  *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).  Defendant Thomas offers no reason to suspect bad faith on the part of the Government.  As such, defendant Thomas' motion shall be DENIED.

C.     *Motions for Leave to Join or Adopt Co-Defendants' Motions*

As this Court noted during the February 23-24 hearing, all motions to join or adopt specified motions of co-defendants shall be GRANTED.  Motions requesting to join or adopt unspecified motions shall be DENIED.  Defendant Butcher's Motion [533] to join shall be GRANTED IN PART as to those motions he specifies, and DENIED IN PART as to his general request to join all motions for which he has standing.

D.     *Motions for Leave to Late File*

All motions for leave to late file, whether filed by defendants or the Government, shall be GRANTED.

E.     *Motions to Suppress Evidence or for a* Franks *Hearing*

1.     *Relevant Legal Standard*

Since defendants' motions to suppress make many of the same arguments, it will be useful to recount the applicable legal standard at the outset.  This Court first notes that its standard of review of a magistrate's finding of probable cause is quite narrow: the Court must accord "great deference" to the issuing official's determination of probable cause, and need only determine that the magistrate had a "substantial basis" for concluding that probable cause existed.  *See Illinois v. Gates*, 462 U.S. 213, 236-37 (1983).  This Court must find that the magistrate, based on totality of the circumstances, determined that there was a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.  In determining whether probable cause exists, this Court must ascertain what facts were provided as a basis for the allegations of wrongdoing and whether there was some basis for believing those facts to be credible.  *See, e.g., United States v. Thomas,* 989 F.2d 1252, 1254 (D.C. Cir. 1993) (quoting *Gates*, 462 U.S. at 238).  If this Court finds that probable cause existed, it need not inquire into the applicability of the good faith exception.

Even where probable cause is found to exist, however, evidence obtained pursuant to a search warrant may nonetheless be suppressed.  This occurs when the affiant, knowingly or with a reckless disregard for the truth, included a false statement in the affidavit, or omitted a statement that would have been material.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  To obtain a hearing to determine whether the evidence must be suppressed, a defendant must also show that the falsehood (or material omission) was material to the finding of probable cause.  *Id.* at 171-72.  In order to obtain a hearing, however, defendants must provide a substantial

preliminary showing: defendant must make specific allegations and must accompany them with a statement of supporting reasons. *Id.* Mere allegations or conclusory statements are insufficient. *Id.*

Given the similarity of defendants' arguments, it is also worth noting that, in a conspiracy investigation, it is not *per se* impermissible for a magistrate to find probable cause based, in part, on allegations of the activities of others, where those activities were in furtherance of the conspiracy and there is basis for finding that the defendant is involved in the conspiracy. Similarly, this Court has been directed to no case holding that a defendant's suspected commission of acts in furtherance of a criminal conspiracy is an insufficient basis, in and of itself, for probable cause to search his residence or vehicle as likely containing evidence of his activities. In fact, in this Circuit, the opposite is true: the Government need not show any more direct connection between the suspected criminal activities and the place to be searched than that persons involved in defendant's suspected activities typically keep evidence or contraband in the target locations. *See United States v. Johnson*, 2006 WL 305500 at *2, 2006 U.S. App. LEXIS 3247, at *5 (D.C. Cir. Feb. 10, 2006) (citing *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993)) (holding that an affiant's statement that, in his or her experience, "drug dealers frequently keep business records, narcotics, proceeds from sales, and firearms in their houses" was sufficient to establish probable cause to search defendant's residence).

Accordingly, it is appropriate for the magistrate, in determining probable cause, to "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). This standard is particularly relevant in conspiracy investigations. *See United States v.*

*Heldt*, 668 F.2d 1238, 1254 (D.C. Cir. 1981) (noting that, because "conspiratorial crimes are conducted with more secrecy than many other crimes," "search warrants that seek evidence of conspiracy, and otherwise meet the required standards, may extend to all relevant evidence of that crime").

    2.    *Defendant Eiland's Motions to Suppress Evidence*

Defendant Eiland moves for suppression of evidence from an apartment [521] and a vehicle [522], including the seizure of four cellular telephones.  He claims that both search warrants were lacking in probable cause and cannot be saved by the good faith exception. (Eiland's Mot. [521] ¶¶ 2, 6-12; [522] ¶¶ 8-11.)  He argues that the specific facts recounted in the affidavits for each search warrant failed to connect the residence and vehicle to the defendant or the suspected illegal activity in a way that could support a finding of probable cause to search those two locations.  (*Id.*)  He further alleges that the affidavit in support of the search warrant for the vehicle omitted a material fact, namely, that a recent search of the van during a traffic stop had yielded no contraband or evidence.  (*Id.* ¶¶ 10-11.)

The Government opposes the motions to suppress.  As to the search of the apartment, it maintains that the affidavit supported a finding of probable cause that defendant Eiland was involved in illegal narcotics trafficking, and that he used his apartment to conduct illegal business (Govt.'s Omnibus Opp'n 12-13.)  As to the search of the vehicle, the Government argues that the affidavit supported a finding of probable cause that defendant Eiland was involved in illegal narcotics trafficking, and that he likely kept evidence of his illegal business in his vehicle. (*Id.* at 27-28.)  In any event, the Government argues that suppression is not warranted because it would have inevitably discovered the evidence obtained from the vehicle, upon a

search incident to arrest and an inventory search.  (*Id.* at 28.)  Finally, the Government contends

that the omission of the prior search of the van was rendered immaterial by the time elapsed.

(*Id.*)

The affidavit as to the apartment contained references to defendant Eiland's conduct

sufficient to support a finding that he was involved in illegal narcotics trafficking.  It recites in

detail evidence obtained from wiretaps, a reverse undercover operation involving suspected

associates of defendant Eiland's, results of physical surveillance on several occasions, and

information provided by confidential informants.  (Sparks Aff. ¶¶ 11-23.)  The affiant also noted

that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep

evidence of their activities in their residences.  (*Id.* ¶ 4.d.)  This might reasonably be believed to

be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a

pattern of activity rather than an isolated incident.  The apartment was believed to be defendant

Eiland's residence.  Taking the totality of these facts into account, this Court finds that the search

warrant for the apartment was sufficient to support a finding of probable cause that evidence of

illegal activity would be found in his apartment.

The affidavit as to the vehicle and cellular telephones contained references to defendant

Eiland's conduct sufficient to support a finding that he was involved in illegal narcotics

trafficking.  It recites in detail evidence obtained from wiretaps and results of other searches.

(Giannakoulias Aff. ¶¶ 11-23.)  The affiant also noted that, in his extensive experience, persons

involved in illegal narcotics trafficking frequently keep evidence of their activities in their

vehicles and to use cellular telephones to facilitate their communications.  (*Id.* ¶ 3.)  Again, this

might reasonably be believed to be particularly likely in conspiracy investigations, where the

suspected criminal acts constitute a pattern of activity rather than an isolated incident.

Considering the totality of the circumstances, this Court finds that the search warrant for the

vehicles and the cellular telephones was sufficient to support a finding of probable cause that

evidence of illegal activity would be found there.

As to defendant Eiland's argument that the failure to report the prior search of the vehicle

constitutes a material falsehood, this Court disagrees.  Defendant fails to show that the prior

search occurred close enough to the search at issue to render it material.  Moreover, that a prior

search revealed no contraband or evidence would not necessarily be material to a subsequent

application, because intervening circumstances might well form the basis of probable cause.

Accordingly, defendant Eiland's motions to suppress or for a *Franks* hearing shall be

DENIED.

### 3.    *Defendant Miller's Motion to Suppress Evidence*

Defendant Miller moves [531] to suppress all physical evidence obtained during a search

of a residence due to a lack of probable cause.  (Miller's Mot. [531] 3.)  He also argues that, even

were probable cause found, the search warrant is invalid because it was "misleading in material

respects."  (*Id.* at 6.)  He argues further that the search warrant was not executed properly,

because the law enforcement officers failed to knock and announce their presence and purpose.

(*Id.* at 8-9.)  Finally, he argues that the information supporting the warrant had become stale by

the time the search was completed.  (*Id.* at 7-8.)

The Government asserts that the affidavit establishes probable cause.  (Govt.'s Omnibus

Opp'n 25-26.)  In the alternative, it contends that the good faith exception applies.  (*Id.* at 26.)  It

also characterizes defendant Miller's claims of material omissions as being too conclusory to

trigger a *Franks* hearing; and his claims of the failure to knock and announce as similarly being to conclusory to warrant a hearing.  (*Id.*)

The affidavit as to the apartment contained references to defendant Miller's conduct sufficient to support a finding that he was involved in illegal narcotics trafficking.  It recites in detail evidence obtained from wiretaps and other physical surveillance, a reverse undercover operation, and information provided by confidential informants.  (Sparks Aff. ¶¶ 9, 17-19, 26-51.)  The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences.  (*Id.* ¶ 4.d.)  This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident.  The apartment was believed to be defendant Miller's residence.  Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

This Court finds defendant Miller's other claims that the search warrant was deficient to be stated so broadly as to provide no basis on which to grant a *Franks* hearing.  Defendant Miller fails to provide any specific allegations to support a finding of material omissions or staleness. Similarly, as to his argument that the officers failed to knock and announce, defendant Miller's motion includes only three sentences in support of this claim.  He states that they "made an illegal entry," that "there is nothing in the affiant's restatement of the warrant's execution" to show that the officers complied with the knock and announce requirement, and that "facts adduced at a hearing will show that the police did not otherwise gain lawful authority to enter." (Miller's Mot. [531] 9.)  At the February 24, 2006 hearing, however, defendant Miller failed to

present any testimony or other evidence in support of his broad claims, or even to make a proffer

of evidence.  The three vague, conclusory sentences in his motion are an insufficient basis, in and

of themselves, to compel this Court to grant a *Franks* hearing.

Accordingly, defendant Miller's motion to suppress shall be DENIED.

*4.        Defendant Moore's Motion to Suppress Evidence or for a* Franks *Hearing*

Defendant Moore moves [425] to suppress all physical evidence obtained during a search

of a residence due to a lack of probable cause.  (Moore's Mot. [425] 3-4.)  He also argues that

law enforcement acted in bad faith in providing the affidavit.  (*Id.* at 5-6.)  Finally, he argues that,

even were probable cause found, the inclusion of a false statement entitles him to a *Franks*

hearing.  (*Id.* at 6-7.)

The Government contends that the affidavit supports a finding of probable cause.

(Govt.'s Omnibus Opp'n 14-19.)  Evidence supporting a finding that defendant Moore was

involved in narcotics trafficking along with several others was presented, including evidence

obtained during searches of others associated with the organization, physical surveillance, and

the results of an investigation into the alteration of the location's address.  (*Id.* at 14-16.)

The affidavit as to the apartment contained references to defendant Moore's conduct

sufficient to support a finding that he was involved in illegal narcotics trafficking.  It recites in

detail evidence obtained from wiretaps and other physical surveillance, results of other

investigations, a reverse undercover operation, and information provided by confidential

informants.  (Sparks Aff. ¶¶ 16-19, 22-51.)  The affiant also noted that, in his extensive

experience, persons involved in illegal narcotics trafficking frequently keep evidence of their

activities in their residences.  (*Id.* ¶ 4.d.)  This might reasonably be believed to be particularly

likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident.  The apartment was believed to be defendant Moore's residence.  Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

As to defendant Moore's request for a *Franks* hearing, this Court finds that the allegedly false statement does not meet the requirement for materiality.  This Court does not find, as required under *Franks*, that had the statement regarding the reason for altering the address numbers been omitted, probable cause would be lacking.  Even if it were material, defendant has provided no evidence that the statement was false, and included with knowledge of its falsity or with reckless disregard for the truth.  Therefore, defendant Moore fails to establish that he is entitled to a *Franks* hearing.  Accordingly, defendant's Moore's motion shall be DENIED.

5.     *Defendant Thomas' Motions to Suppress*

Defendant Thomas filed two motions seeking suppression of evidence against him.  The first [539], seeks to suppress consensual telephone calls between Timothy Thomas and Tyrone Thomas that have been collected by government agents.  The basis for his motion is that the tapes are unintelligible, have been tampered with and are damaged.  (Thomas' Mot. 3.)  The Government objects, asserting that a pretrial determination on the authenticity and audibility of the tapes is neither warranted nor necessary.  (Govt.'s Omnibus Opp'n 34.)  This Court finds that the Government's intention to establish during trial that the tapes are authentic and audible is reasonable.  Defendant Thomas has provided no basis for the necessity of a pretrial ruling. Accordingly, defendant Thomas' motion shall be DENIED.

26

Defendant Thomas also moves [551] to suppress tangible evidence seized during the search of his residence, because it was based on an affidavit insufficient to establish probable cause.  (Thomas' Mot. [551] 6.)  He further argues that the good faith exception does not apply because the affidavit was so lacking in probable cause that it was unreasonable for the issuing magistrate to believe that probable cause existed.  (*Id.* at 8.)  Additionally, he claims that an omission rendered the affidavit misleading, entitling him to a *Franks* hearing.  (*Id.* at 8-9; Thomas' Reply [574] 3-6.)

The Government contends that the affidavit supports a finding of probable cause. (Govt.'s Omnibus Opp'n 3-6.)  Evidence supporting a finding that defendant Thomas was involved in narcotics trafficking along with several others was presented, including evidence obtained during searches of others associated with the organization, physical surveillance and information obtained from confidential sources.  (*Id.* at 4-6.)

The affidavit as to the apartment contained references to defendant Thomas' conduct sufficient to support a finding that he was involved in illegal narcotics trafficking.  It recites in detail evidence obtained from wiretaps and other physical surveillance, and information provided by reliable sources.  (Giannakoulias Aff. ¶¶ 5-9.)  The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences.  (*Id.* ¶ 3.)  This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident.  The apartment was believed to be defendant Thomas' residence.  Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal

activity would be found in his apartment.

As to defendant Thomas' request for a *Franks* hearing, this Court finds that his conclusory statement that a misleading omission tainted the search warrant to be insufficient to justify a *Franks* hearing.  Accordingly, defendant Thomas' motion shall be DENIED.

>    6.    *Defendant Gaskins' Motions to Suppress*

Defendant Gaskins filed two motions [490, 492] to suppress physical evidence seized from a searches of two of his residences.  The first motion [490] is based on arguments that the warrant lacked probable cause and that law enforcement failed to knock and announce.  (Gaskins' Mot. [490] 1; Gaskins' Reply [574] 4-5.)  As to probable cause, he argues that there was no basis to find that evidence or contraband would be present in the home.  (Gaskins' Mot. [490] 2; Gaskins' Reply [574] 4.)  He further argues that the affidavit was so lacking in probable cause that the good faith exception does not apply.  (Gaskins' Mot. [490] 3.)

It is the Government's position that the affidavit supports a finding of probable cause.  (Govt.'s Omnibus Opp'n 23-24.)  Evidence supporting a finding that defendant Gaskins was involved in narcotics trafficking conspiracy was presented, including evidence obtained during searches of others associated with the organization and physical surveillance.  (*Id.* at 24.)

The affidavit as to the apartment contained references to defendant Gaskins' conduct sufficient to support a finding that he was involved in illegal narcotics trafficking.  It recites in detail evidence obtained from wiretaps and other physical surveillance, and information provided by reliable sources.  (Sparks Aff. ¶¶ 9-51.)  The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences.  (*Id.* ¶ 4.d.)  This might reasonably be believed to be particularly

likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Gaskins' residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

In support of his argument that law enforcement failed to knock and announce, defendant Gaskins presented the testimony of several witnesses at this Court's February 23, 2006 hearing. They all testified that they did not hear the law enforcement officers knock and announce, and that the officers and agents entered the apartment very quickly. Two FBI agents testified on behalf of the Government. All of defendant Gaskins' witnesses were either asleep at the time of execution, or were located some distance from the front door, such that they would not be expected to hear the knock and announce. The credible testimony of the agents consistently demonstrated that they knocked several times and loudly proclaimed their identity. Thus, this Court finds that the Government has sufficiently demonstrated that the officers completed the knock and announce procedure. The residents' failure to hear it simply reflects the fact that they were sleeping or otherwise unable to hear. Accordingly, defendant Gaskins' motion shall be DENIED.

Defendant Gaskins' second motion [492] to suppress refers to a search of a different residence. He asserts that the search warrant was not based on probable cause, and in fact was so lacking that the officers cannot rely on the good faith exception. (Gaskins' Mot. [492] 4-5; Gaskins' Reply [574] 6-7.) The Government contends that the affidavit supports a finding of probable cause. (Govt.'s Omnibus Opp'n 9-10.) Evidence supporting a finding that defendant

Gaskins was involved in narcotics trafficking conspiracy was presented, including evidence

obtained during searches of others associated with the organization and physical surveillance.

(*Id.*)

The affidavit as to the apartment contained references to defendant Gaskins' conduct

sufficient to support a finding that he was involved in illegal narcotics trafficking.  It recites in

detail evidence obtained from wiretaps and other physical surveillance and a reverse undercover

operation.  (Sparks Aff. ¶¶ 11-23.)  The affiant also noted that, in his extensive experience,

persons involved in illegal narcotics trafficking frequently keep evidence of their activities in

their residences.  (*Id.* ¶ 4.d.)  This might reasonably be believed to be particularly likely in

conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather

than an isolated incident.  The apartment was believed to be defendant Gaskins' residence.

Taking the totality of these facts into account, this Court finds that the search warrant for the

apartment was sufficient to support a finding of probable cause that evidence of illegal activity

would be found in his apartment.

Accordingly, defendant Gaskins' motions shall be DENIED.

F.      *Motions Relating to Miscellaneous Matters*

1.      *Defendant Moore's Motion to Proceed* Pro Se *with Assistance of Standby Counsel*

Defendant Moore requests [567], and was granted in open court on February 24,

permission to proceed *pro se*.  Defendant's right to represent himself is well-established.  *See*

*Faretta v. California*, 422 U.S. 806, 816-17 (1975); 28 U.S.C. § 1654 (1948).  Given that the

Court has determined that defendant Moore's waiver of counsel was made knowingly and

voluntarily, his motion to proceed *pro se* with Mr. Zucker remaining as standby counsel is

30

GRANTED.

    2.    *Defendant Thomas' Motion for Implementation of Trial Procedures*

Defendant Thomas moves [552] for implementation of certain trial procedures.  He requests the following: an exhibit list; summary and demonstrative exhibits; an order excluding prospective witnesses from the courtroom; an order that will allow defense counsel to bring civilian clothing for defendant Thomas to wear during the proceedings; and permission for counsel to bring and use a laptop computer in the courtroom.  (Thomas' Mot. [552] 1-2.)

The Government opposes two of these requests.  First, it resists the demand for an exhibit list as being wholly without authority, and infringing on the Government's privilege for attorney work-product.  (Govt.'s Omnibus Opp'n 53-54.)  The Government also opposes defendant Thomas' request that this Court issue an order excluding prospective witnesses from trial to the extent that his request includes "case agents." (*Id.* at 54.)  Such agents, the Government notes, are not excluded from observing the proceedings even if they are expected to testify. (*Id.*)

Defendant Thomas has failed to direct this Court to any basis of support for his request to be provided with an exhibit list.  Accordingly, it shall be denied.  As to exclusion of prospective witnesses, this Court notes that, pursuant to Rule 615, it will generally exclude witness from the courtroom upon the request of any party.  The rule contains several exceptions, however, and the Government's intention to have seated at its table a case agent falls squarely within the exception for investigative agents included in the rule.  Accordingly, the Court shall grant defendant Thomas' request to exclude prospective witnesses only to the extent they are not excepted from the rule.

As to defendant Thomas' three other requests, the Government has no opposition. (*Id.*)

The Government has already indicated its intention to provide a summary Rule 1006 exhibit as soon as it is complete.  *See supra* Part II.A.10.  The Government does not oppose defendant Thomas' request to wear civilian clothing, nor to his attorney's request to use a laptop computer in the courtroom.  (Govt.'s Omnibus Opp'n 49.)  This Court finds these requests to be reasonable.  Accordingly, they shall be granted.  Defendant Thomas' motion, then, shall be GRANTED IN PART, as to his request for a Rule 1006 exhibit, his request to wear civilian clothing, and his attorney's request to use a laptop computer in the courtroom, and DENIED IN PART, as to his request for an exhibit list and as to his request that all prospective witnesses, including case agents, be excluded from the proceedings.

> 3.      *Defendant Moore's Motion for Recusal*

Defendant Moore requested [503] that the judge in this matter recuse himself due to contacts with defendant Moore in a prior case before this Court.  (Moore's Mot. [503] ¶¶ 1-7.) Defendant Moore concedes that the duty to recuse based on information learned about a defendant generally arises only where that information was obtained from an extra-judicial source, that is, outside one's role as a judicial officer.  (*Id.* ¶ 7.)  He maintains, however, that the judge's beliefs or opinions formed during his prior interaction with defendant Moore give rise to a reasonable question of his impartiality, and as such, mandate recusal.  (*Id.* ¶¶ 7-8 .)  The Government opposes defendant Moore's motion on the basis that the allegations are unsupported and insufficient to require recusal.  (Govt.'s Omnibus Opp'n 53.)

Defendant Moore moves for disqualification pursuant to 28 U.S.C. § 455(a) (1948), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Defendant

Moore's allegation of impartiality rests on two claims: that the judge "denied defendant employment in an unrelated case" and that he "has heard cases involving violent gangs' promotion of Omerta." (Thomas' Mot. [503] ¶ 8.) Even accepting these claims as true, they fail to provide any basis for recusal due to impartiality. That the Court has, in its judicial capacity, previously encountered defendant Moore and evidence relating to "Omerta" that may be similar to evidence presented in this case, in and of itself, plainly fails to support a claim of prejudice, bias, or lack of impartiality.

Defendant correctly notes that typically, the circumstances giving rise to the appearance of bias or prejudice must stem from an extrajudicial source. *See Liteky v. United States*, 510 U.S. 540, 551 (1994); *United States v. Microsoft Corp.*, 253 F.3d 34, 115 (D.C. Cir. 2001) (noting that it would be "extraordinary to disqualify a judge for bias or appearance of partiality when his remarks arguably reflected what he learned, or what he thought he learned, during the proceedings"); *see also United States v. Barry*, 961 F.2d 260, 263 (D.D.C. 1992) (Jackson, J.). Here, the information was obtained in a judicial capacity, and defendant has failed to provide a basis for applying to this case the limited exceptions to that rule. Accordingly, defendant's motion for recusal shall be DENIED.

### 4. *Defendant Moore's Motion to Transfer Venue*

Defendant Moore requests [498], under Fed. R. Crim. P. 21(a), that this matter be transferred to a district outside the District of Columbia. (Moore's Mot. [498] ¶ 1.) Such a move is necessary, he states, because the attention he has received in District of Columbia media will prevent him from obtaining a fair trial. (*Id.* ¶¶ 2-6.) The Government opposes the motion on the grounds that defendant Moore has failed to show a reasonable likelihood of prejudice resulting

from the media coverage.  (Govt.'s Omnibus Opp'n 52.)

Federal Rule 21(a) "is intended for cases in which prejudice in the community will make it difficult or impossible to select a fair and impartial jury."  2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE § 342 (1982).  In evaluating the likelihood that publicity will affect defendant's right to a fair trial, a critical factor is how close in time the publicity is to the trial. *Wansley v. Slayton*, 487 F.2d 90, 93-94 (4th Cir.1973) (citing *Beck v. Washington*, 369 U.S. 541, 556 (1962) (concluding that a lapse of nine and a half months was sufficient time for the impact of any prejudicial publicity to subside)); *United States v. Bowe*, 360 F.2d 1, 11 (2d Cir.), *cert. denied*, 385 U.S. 961 (1966) (holding that since the publicity was twelve weeks old at the time the jury was empaneled, it was highly unlikely that it was retained in the jurors' memories)).  In this case, all of the publicity cited by defendant Moore occurred well over a year ago.  This Court finds that any prejudice that may have occurred at the time of publication of the news reports has most likely been forgotten by prospective jurors.  As to defendant Moore's concern that publicly-available court records have contributed to pretrial publicity, this Court finds no basis for concluding that they provide the kind of "media attention" that Rule 21(a) seeks to protect against.  While publicly available, they are by no means widely disseminated.  They would likely be reviewed by very few members of the public.  There is absolutely no indication that they present the dangers that mainstream media reports raise.  Therefore, this Court does not consider a change of venue to be necessary to protect defendants' rights to a fair trial.  Accordingly, defendant Moore's motion shall be DENIED.

   5.     *Defendant Miller's Motion to Sever*

Defendant Miller moves [534] to sever his case from that of his co-defendant Timothy

Thomas.  He claims that severance is warranted because defendant Thomas may provide

exculpatory testimony at trial, and because the Government may introduce at trial statements

made by defendant Thomas that are incriminating of defendant Miller, in violation of *Bruton*.

(Miller's Mot. [534] 4-6.)  The Government opposes severance, arguing that defendant Miller's

motion is untimely, that the defendants were properly joined in the indictment, that defendant

Miller's reliance on *Bruton* is misplaced because the Government would seek to introduce any

such statements under the co-conspirator exception, and because there is no basis for expecting

defendant Thomas to testify, of if he does, to provide exculpatory testimony.  (Govt.'s Omnibus

Opp'n 59.)

        This Court has already considered the propriety of joinder in this matter in its

Memorandum Opinion and Order dated December 8, 2005.  Even though defendant Miller

elected not to file a motion for severance, this Court considered each trial group and determined

that the defendants were properly joined and that severance was not warranted.  As to defendant

Miller's assertion that *Bruton* mandates severance, this Court has already determined, *supra* Part

II.A.2, several motions relating to *Bruton* statements.  As there noted, the Government has

indicated that it does not intend to introduce any co-conspirator or co-defendant statements that

lack an independent basis of admissibility.  Therefore, the *Bruton* issue is moot.  As to defendant

Miller's final argument relating to the possibility of exculpatory evidence, this Court finds that

his bare assertion, without any support, that defendant Thomas will testify and will exculpate

defendant Miller is insufficient to justify severance at this time.  Accordingly, defendant Miller's

motion shall be DENIED.

### III.  CONCLUSION

For the foregoing reasons, this Court has determined that all motions [296, 508, 525, 533, 517, 536, 547, 556, 557, 558, 565, 566, 581] to join or adopt specified motions of co-defendants shall be GRANTED; defendant Eiland's motion [525] to join or adopt unspecified motions of co-defendants shall be DENIED; defendant Butcher's Motion [533] to join shall be GRANTED in part as to those motions he specifies, and DENIED in part as to his general request to join all motions for which he has standing; all motions [529, 564, 576] for leave to late file shall be GRANTED; two motions [491, 538] relating to discovery shall be GRANTED; all other motions relating to discovery [151, 211, 346, 386, 393, 419, 499, 502, 518, 520, 523, 524, 526, 530, 532, 535, 537, 540, 541, 542, 543, 546, 549, 550, 555, 578] shall be DENIED; all motions to dismiss [151, 544, 545, 548] shall be DENIED; and all motions [425, 490, 492, 497, 521, 522, 531, 539, 551] to suppress or for a *Franks* hearing shall be DENIED.

As to the miscellaneous motions, defendant Miller's Motion [534] to Sever Defendants shall be DENIED; defendant Moore's Motion [503] for Recusal shall be DENIED; defendant Moore's Motion [498] to Transfer Due to Prejudicial Publicity shall be DENIED; and defendant Thomas' Motion [553] *in Limine* Regarding Admission of Wiretap Calls shall be DENIED. Defendant Moore's Motion [567] to Proceed *Pro Se* with the Assistance of Standby Counsel shall be GRANTED; and defendant Thomas' Motion [552] for Implementation of Trial Procedures shall be GRANTED IN PART and DENIED IN PART.


A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 1, 2006.